1
2
3
4

LEWIS WAGNER, LLP
Dina M. Cox (admitted *pro hac vice*)
dcox@lewiswagner.com
501 Indiana Avenue, Suite 200
Indianapolis, IN 46202
Telephone:   317-237-0500
Fax:              317-630-2799

5
6
7
8
9

LATHAM & WATKINS LLP
David J. Schindler, Bar # 130490
david.schindler@lw.com
Jonathan M. Jackson, Bar # 257554
jonathan.jackson@lw.com
355 South Grand Avenue
Los Angeles, CA 90071
Telephone:   213-891-8556
Fax:              213-891-8763

10

*Attorneys for Defendant*
*Guthy-Renker LLC*

11

12    **UNITED STATES DISTRICT COURT**

13    **CENTRAL DISTRICT OF CALIFORNIA**

14    **WESTERN DIVISION**

15

16
17
18
19
20
21
22

AMY FRIEDMAN, JUDI MILLER,
and KRYSTAL HENRY-
MCARTHUR, on behalf of
themselves and all others similarly
situated,

                    Plaintiffs,

        v.

GUTHY-RENKER LLC,

                    Defendant.

Case No. 2:14-cv-06009

**DEFENDANT GUTHY-RENKER
LLC's REPLY IN SUPPORT OF ITS
MOTION (1) TO COMPEL
ARBITRATION AND TO DISMISS,
OR STAY, THE FIRST AMENDED
COMPLAINT AS TO PLAINTIFFS
FRIEDMAN AND HENRY-
MCARTHUR PURSUANT TO FED.
R. CIV. P. 12(b)(1) & (6); AND (2) TO
DISMISS COUNTS I AND IV AS TO
ALL PLAINTIFFS PURSUANT TO
FED. R. CIV. P. 12(b)(6)**

23
24
25

Hearing Date:   February 23, 2015
Time:               1:30 p.m.
Judge:              Hon. Otis D. Wright II
Courtroom:       11

26
27
28

# <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

INTRODUCTION ........................................................................................ 1

    A.    Friedman and Henry-McArthur's Claims Are Subject to Arbitration and Class-Action Waiver ...................................... 1

    B.    Plaintiffs Fail to State a Claim for Common Counts/Assumpsit ........... 6

    C.    Plaintiffs Fail to State a Claim for Breach of Warranty ....................... 8

CONCLUSION......................................................................................... 12

# <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

## CASES

*Am. Suzuki Motor Corp. v. Superior Court*,
   37 Cal. App. 4th 1291 (Cal. Ct. App. 1995) ................................... 12

*Anderson v. Jamba Juice Co.*,
   No. 12-cv-1213 YGR, 2012 U.S. Dist. LEXIS 120723 (N.D. Cal.
   Aug. 25, 2012) ................................................................................. 8

*Astiana v. Dreyer's Grand Ice Cream, Inc.*,
   Nos. C-11-2910 & C-11-3164, 2012 U.S. Dist. LEXIS 101371
   (N.D. Cal. July 20, 2012) ................................................................ 8

*Brazil v. Dole Foods*,
   935 F. Supp. 2d 947 (N.D. Cal. 2013) ........................................... 10

*Canepa v. Sun Pac., Inc.*,
   272 P.2d 860 (Cal. Ct. App. 1954) .................................................. 6

*Cortina v. Wal-Mart, Inc.*,
   No. 13-cv-2054 BAS (DHB), 2014 U.S. Dist. LEXIS 85941 (S.D.
   Cal. June 23, 2014) .......................................................................... 9

*Dei Rossi v. Whirlpool Corp.*,
   No. 2:12-cv-00125, 2013 U.S. Dist. LEXIS 153682 (E.D. Cal. Oct.
   25, 2013) ........................................................................................ 10

*Dorsey v. Rockhard Labs., LLC*,
   No. CV 13-07557 DDP, 2014 WL 4678969 (C.D. Cal. Sept. 19,
   2014) ................................................................................................ 9

*Ecological Rights Found. v. Pac. Gas & Elec. Co.*,
   713 F.3d 502 (9th Cir. 2013) .......................................................... 12

*Foman v. Davis*,
   371 U.S. 178 (1962) ....................................................................... 12

*Ford v. Hotwire, Inc.*,
   2007 U.S. Dist. LEXIS 98370 (S.D. Cal. Nov. 19, 2007) ............... 7

*Frenzel v. Aliphcom*,
   No. 14-cv-03587-WHO, 2014 U.S. Dist. LEXIS 177880 (N.D. Cal.
   Dec. 29, 2014) ............................................................................... 11

*Fteja v. Facebook, Inc.*,
   841 F. Supp. 2d 829 (S.D.N.Y. 2012) .............................................. 3

*Galitski v. Samsung Telecomms. Am.*,
   No. 3:12-CV-4782, 2013 U.S. Dist. LEXIS 171908 (N.D. Tex.
   Dec. 5, 2013) .................................................................................... 7

ii

*Graphic Arts Sys. v. Scitex Am. Corp.*,
　No. CV 92-6997-WMB, 1993 U.S. Dist. LEXIS 21052 (C.D. Cal.
　June 12, 2013) ................................................................................... 11

*Guadagno v. E\*Trade Bank*,
　592 F. Supp. 2d 1263 (C.D. Cal. 2008) ........................................... 2, 5

*Kelley v. Microsoft Corp.*,
　No. C07-0475MJP, 2007 U.S. Dist. LEXIS 66721 (W.D. Wash.
　Sept. 10, 2007) ................................................................................... 11

*Kosta v. Del Monte Corp.*,
　No. 12-cv-01722-YGR, 2013 U.S. Dist. LEXIS 69319 (N.D. Cal.
　May 15, 2013) ....................................................................................... 8

*McBride v. Boughton*,
　123 Ca. App. 4th 379 (Cal. Ct. App. 2004) ........................................ 7

*Merkin v. Vonage Am., Inc.*,
　No. 2:13-cv-08206-CAS(MRWx), 2014 U.S. Dist. LEXIS 14055
　(C.D. Cal. Feb. 3, 2014) ...................................................................... 2

*Miguel v. JPMorgan Chase Bank, N.A.*,
　No. CV 12-3308 PSG, 2013 U.S. Dist. LEXIS 16865 (C.D. Cal.
　Feb. 5, 2013) ......................................................................................... 3

*Miller v. Yokohama Tire Corp.*,
　358 F.3d 616 (9th Cir. 2004) .............................................................. 12

*In re Morning Song Bird Food Litig.*,
　No. 12cv1592 JAH (RBB), 2013 U.S. Dist. LEXIS 149153 (S.D.
　Cal. Sept. 30, 2013) ............................................................................. 9

*Nguyen v. Barnes & Noble Inc.*,
　763 F.3d 1171 (9th Cir. 2014) .............................................................. 5

*PDC Labs., Inc. v. Hach Co.*,
　No. 09-1110, 2009 U.S. Dist. LEXIS 75378 (C.D. Ill. Aug. 25,
　2009) ...................................................................................................... 5

*Pentecostal Temple Church v. Streaming Faith, LLC*,
　No. 08-554, 2008 U.S. Dist. LEXIS 71878 (W.D. Pa. Sept. 16,
　2008) ...................................................................................................... 3

*Schwartz v. Comcast Corp.*,
　F. App'x 515 (3d Cir. 2007) ................................................................. 4

*In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection
　HDTV TV Litig.*,
　758 F. Supp. 2d 1077 (S.D. Cal. 2010) ............................................. 11

*Spartech CMD, LLC v. Int'l Auto. Components Grp., N. Am., Inc.*,
　No. 08-13234, 2009 U.S. Dist. LEXIS 13662 (E.D. Mich. Feb. 23,
　2009) ...................................................................................................... 4

*Specht v. Netscape Commc'ns Corp.*,
   306 F.3d 17 (2d Cir. 2002) ............................................................. 5, 6

*Stearns v. Select Comfort Retail Corp.*,
   2009 U.S. Dist. LEXIS 48367 (N.D. Cal. June 5, 2009) .................... 11

*U-Haul Co. of W. Va. v. Zakaib*,
   232 W. Va. 432 (W. Va. 2013) ........................................................... 3

*United States v. Corinthian Colleges*,
   65 F.3d 984 (9th Cir. 2011) ............................................................... 7

*Viggiano v. Hansen Natural Corp.*,
   944 F. Supp. 2d 877 (C.D. Cal. 2013) ............................................. 10

*Wright v. Early Warning Sys.*,
   No. 10-988-GMS, 2012 U.S. Dist. LEXIS 21719 (D. Del. Feb. 22,
   2012) .................................................................................................. 2

## STATUTES

9 U.S.C. § 1 *et seq.* (Federal Arbitration Act) ...................................... 6

15 U.S.C.
   § 2301(6) .......................................................................................... 10
   § 2301 *et seq.* (Magnuson-Moss Warranty Act) ........................... *passim*

## RULES

Fed. R. Civ. P.
   12(b)(1) ............................................................................................... 1
   12(b)(6) ............................................................................................ 1, 8
   56 ......................................................................................................... 7

## REGULATIONS

16 C.F.R. 700.3(a) ................................................................................ 10

**INTRODUCTION**

Plaintiffs' opposition to Guthy-Renker's Motion to dismiss Plaintiffs Henry-McArthur and Friedman's claims under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) fails to overcome Guthy-Renker's grounds for dismissal. Plaintiffs Henry-McArthur and Friedman ("Henry-McArthur" and "Friedman," respectively) accepted electronically presented terms and conditions which require their claims be submitted to arbitration, thereby depriving this Court of subject matter jurisdiction. Moreover, Count I (breach of warranty) and Count IV (assumpsit) of Plaintiffs' First Amended Complaint fail to state a claim upon which relief may be granted and should be dismissed. Plaintiffs' breach of warranty claims fail because Guthy-Renker's marketing statements are not "written warranties" under the Magnuson-Moss Warranty Act ("the MMWA") but rather non-actionable marketing statements. Plaintiffs' implied warranty claims fail as to Plaintiffs Miller and Henry-McArthur, because Guthy-Renker expressly disclaimed implied warranties to the fullest extent permissible by California law; also, Plaintiffs' claim for breach of implied warranty for fitness for a particular purpose fails because they have not alleged a specific use peculiar to their intended use of the products. Count IV, Plaintiffs' claim for common counts/assumpsit based on quasi-contract, similarly fails because California law does not allow quasi-contract claims to proceed where, as here, there is an express contract defining the parties' rights.

**A. Friedman and Henry-McArthur's Claims Are Subject to Arbitration and Class-Action Waiver**

There is no dispute that Friedman and Henry-McArthur could not complete their purchase without clicking a checkbox, which indicated to the consumer that they were agreeing to the terms and conditions on the checkout page. Jason Solano Decl. ¶¶ 9, 14. The Terms & Conditions contain a provision compelling Friedman and Henry-McArthur's claims to arbitration and precluding them from litigating a class action with respect to claims covered by the Terms & Conditions. Ex. C. to

1

Jason Solano Decl.  The Terms & Conditions were presented to both Friedman and Henry-McArthur via a clickable hyperlink, which automatically directed them to the language of the Terms & Conditions.  *Id.* at ¶¶ 9, 14.  For both Friedman and Henry-McArthur, assent to the Terms & Conditions was a "required field" prior to completion of the purchase process.  *Id.* at ¶¶ 9, 15.

Henry-McArthur's only argument for not being bound by the terms and conditions she accepted was that she "never read, nor knowingly assented to the WEN Terms and Conditions."  Pls.' Mem. of P. & A. in Opp. 10.  Henry-McArthur's "failure to read a contract is no defense to claim that contract was formed."  *Merkin v. Vonage Am., Inc.*, No. 2:13-cv-08026-CAS(MRWx), 2014 U.S. Dist. LEXIS 14055, at *7-9 (C.D. Cal. Feb. 3, 2014) (courts routinely enforce online contracts where the terms are made available to the party assenting to contract); *see also Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008) (plaintiff may be bound by an agreement presented electronically, regardless of whether plaintiff actually reads the agreement).  Even if Henry-McArthur failed to read the terms and conditions before accepting them as she now claims, her failure does not excuse her from being bound by them as a matter of law.

Plaintiffs cite no controlling authority for their contention that a hyperlink to terms and conditions and an accompanying clickable checkbox does not constitute sufficient notice.  In fact, federal courts have found that where, as here, a consumer was presented with language stating "Agree to Terms" and had to click an icon expressing assent to terms and conditions prior to completing his or her purchase, even when the terms and conditions were located on a separate page through a hyperlink, that consumer manifests unambiguous intent to be bound to those terms and conditions.  *See Wright v. Early Warning Sys.*, No. 10-988-GMS, 2012 U.S. Dist. LEXIS 21719, at *7-9 (D. Del. Feb. 22, 2012) (stating plaintiff was bound to terms and conditions, including arbitration provision contained therein, by clicking "I

2

Agree" icon next to phrase "Agree to Terms," when terms and conditions language itself was located separately from the clickable icon); *see also Fteja v. Facebook, Inc.*, 841 F. Supp. 2d 829, 839-41 (S.D.N.Y. 2012) (compiling cases addressing the enforceability of terms and conditions where terms were accessible via hyperlink; upholding enforceability of forum selection clause contained in terms and conditions where website presented consumer with hyperlink to terms and conditions and required consumer to click interactive "Sign Up" feature to assent to terms). Plaintiffs' reliance on *U-Haul Co. of W. Va. v. Zakaib*, 232 W. Va. 432, 444 (W. Va. 2013) is unavailing because this Court and other federal courts have repeatedly held that parties may be bound by terms that are incorporated by reference into an agreement, even when those terms are more fully explained elsewhere, so long as the plaintiff has notice and the opportunity to read the terms.[1]  *See, e.g.*, *Miguel v. JPMorgan Chase Bank, N.A.*, No. CV 12-3308 PSG (PLAx), 2013 U.S. Dist. LEXIS 16865, at *11-13 (C.D. Cal. Feb. 5, 2013) (arbitration provision, which was incorporated by reference into contract terms via clickable hyperlink, was enforceable against plaintiff under California law; compelling plaintiff to arbitration and staying class action); *Pentecostal Temple Church v. Streaming Faith, LLC*, No. 08-554, 2008 U.S. Dist. LEXIS 71878, at *14-15 (W.D. Pa. Sept. 16, 2008) (terms and conditions, which were readily available on defendant's website, were incorporated by reference into purchase order and were binding even when plaintiff did not read them); *see also Schwartz v. Comcast Corp.*, F. App'x 515, 520 (3d Cir.

---

[1] In *U-Haul*, the defendant's retail stores provided electronic terminals that displayed contract terms to consumers. *U-Haul Co. of W. Va. v. Zakaib*, 232 W. Va. 432, 437 (W. Va. 2013). Consumers had to click an "Accept" button on the terminal to agree to the contract. *Id.* The text accompanying the button indicated that customers agreed to the terms of the contract and an addendum to the contract. *Id.* The contract terms were provided to customers before clicking the "Accept" button. *Id.* However, the addendum was not provided to consumers until after they clicked the button, at which time consumers would be given a printed copy of the addendum. *Id.* In contrast, the WEN® Terms & Conditions were immediately available to consumers via a conspicuous clickable hyperlink – which was visible without scrolling – on the same page as the clickable checkbox through which consumers demonstrated assent to the Terms & Conditions.

3

2007) (consumer was on notice of contract terms that contained arbitration provision, which were available on defendant's website, and was thus bound by those terms); *Spartech CMD, LLC v. Int'l Auto. Components Grp., N. Am., Inc.*, No. 08-13234, 2009 U.S. Dist. LEXIS 13662, at *12-15 (E.D. Mich. Feb. 23, 2009) (rejecting argument that arbitration provision was invalid because it was located in terms and conditions the plaintiff never viewed because terms and conditions were located on defendant's website and incorporated by reference into purchase order at issue).

Friedman's excuse for why she claims she should not be bound by the arbitration provision contained in the terms and conditions to which she agreed is equally unavailing. Friedman claims that a reasonable consumer would not have been put on notice that, by clicking the checkbox, she was agreeing to the Terms & Conditions of the sale based on the presentation of the web page. Friedman fails to acknowledge all the characteristics of the page that draw attention to the field requiring assent to the Terms & Conditions, thereby accomplishing notice to her.

To start, the field labeled "Agree to terms," which was required to be clicked before Friedman could purchase, was marked by a conspicuous red asterisk. And, just a few inches below the checkbox next to the "Agree to terms" language was a hyperlink entitled "Terms & Conditions," which was bolded, presented in contrasting-colored text, and automatically displayed as underlined when consumers moved their cursor over the hyperlink. *See* Jason Solano Decl. ¶ 9. The Ninth Circuit has recognized that presentation of terms and conditions via a "Terms of Use" hyperlink in underlined, color-contrasting text that also contains language stating that a user "[r]eview terms" prior to purchase sufficiently puts a user of the website on constructive notice of those terms and conditions such that the terms and conditions are enforceable. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1178 (9th Cir. 2014) (citing *PDC Labs., Inc. v. Hach Co.*, No. 09-1110, 2009 U.S. Dist. LEXIS 75378, at *3 (C.D. Ill. Aug. 25, 2009)). In addition, this Court previously found that a

4

highlighted, underlined link to the agreement at issue was located near a clickable acknowledgement icon, which placed the plaintiff on notice of the agreement. *Guadagno v. E*Trade Bank*, 592 F. Supp. 2d 1263, 1271 (C.D. Cal. 2008). The Court found that, by clicking on the icon, the plaintiff accepted the terms of the agreement and therefore assented to the arbitration clause contained therein. *Id.*

Friedman ignores the fact that the hyperlink was underlined and in color-contrasting text. Instead, she argues that she did not notice it because the word "term" was not capitalized in the phrase "Agree to terms" located next to the checkbox instructing her to agree to the terms and conditions. Pls.' Mem. of P. & A. in Opp. 5. Plaintiffs offer no case law suggesting that the word "term" must be capitalized in order to accomplish notice to the consumer.

In trying to avoid the conclusion that she was on notice, Friedman claims that her clicking the checkbox was merely assenting to Guthy-Renker's "credit card conditions[.]" Pls.' Mem. of P. & A. in Opp. 7-8. The checkout page presented to Plaintiff Friedman does not reference the word "terms" anywhere on the webpage except (1) in the "Agree to terms" phrase immediately to the right of the clickable checkbox and (2) in the "Terms & Conditions" hyperlink provided on the same checkout page. Jason Solano Decl. ¶ 9.

Friedman relies on *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17 (2d Cir. 2002) to support her argument that agreeing to "terms" does not mean agreeing to the Terms & Conditions. *Specht* is neither controlling nor dispositive. The presentation of the terms in *Specht* is factually dissimilar to the presentations to Plaintiffs Friedman and Henry-McArthur. In *Specht*, the terms were only viewable by consumers on a separate screen which required consumers to scroll down in order to notice the terms prior to clicking a "Yes" icon. *Specht*, 306 F.3d at 31-35. In contrast, the presentation of the terms here was provided on the same page as the checkbox displayed to both Plaintiff Friedman and Henry-McArthur, such that

DEFENDANT'S REPLY I/S/O
MOTION TO DISMISS

neither was required to scroll down or engage in any other action aside from clicking the "Terms & Conditions" hyperlink to view the language of the Terms & Conditions.

The presentation of the Terms & Conditions was adequate to put Friedman on notice that she was agreeing to the Terms & Conditions.[2]  Plaintiffs do not dispute that the terms and conditions contained an arbitration provision.  Friedman's and Henry-McArthur's purchase of a WEN® Hair Care Kit containing WEN® Sweet Almond Mint cleansing conditioner is a transaction subject to the Federal Arbitration Act; thus, their claims must be submitted to arbitration and dismissed or at, at a minimum, stayed pending completion of arbitration.

**B.     Plaintiffs Fail to State a Claim for Common Counts/Assumpsit**

Plaintiffs' claim for common counts/assumpsit fails for the same reasons arbitration should be compelled.  By agreeing to the terms and conditions governing their purchases, Friedman and Henry-McArthur entered into a contract which contained an enforceable arbitration provision.  California law provides that, when there is a contract, a plaintiff cannot bring a claim for a common count for assumpsit.  *See Canepa v. Sun Pac., Inc.*, 272 P.2d 860, 865 (Cal. Ct. App. 1954).  Plaintiffs counter that a contract was not formed, and they did not bring a claim for breach of contract.  Pls. Mem. of P. & A. in Opp. 17.

Plaintiffs miss the mark with these arguments.  California law precludes Plaintiffs from maintaining a cause of action for assumpsit because their warranty claims are predicated on a theory of recovery that sounds in contract.  *Galitski v. Samsung Telecomms. Am.*, No. 3:12-CV-4782, 2013 U.S. Dist. LEXIS 171908, at *56-58 (N.D. Tex. Dec. 5, 2013) (applying California law and dismissing plaintiffs' common count predicated on quasi-contract theory in light of plaintiffs' warranty claims).  Indeed, a common count is subject to dismissal where it is used as an

---

[2] Regardless of whether the presentation of the Terms & Conditions evolved over time, the presentation to both Plaintiff Friedman and Henry-McArthur are equally sufficient to show constructive notice and assent to the Terms & Conditions.

DEFENDANT'S REPLY I/S/O
MOTION TO DISMISS

alternative way of seeking the same recovery sought in another cause of action, where the common count is based on the same facts as the other cause of action.  *McBride v. Boughton*, 123 Ca. App. 4th 379, 394 (Cal. Ct. App. 2004).

Plaintiffs attempt to save their assumpsit claims with a faulty procedural argument that Guthy-Renker's Motion must be converted into a Rule Fed. R. Civ. P. 56 motion.  The Ninth Circuit interprets the Federal Rules to mean that a court "may also consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claims; and (3) no party questions the authenticity of the document."  *United States v. Corinthian Colleges*, 65 F.3d 984, 999 (9th Cir. 2011) (citations omitted); *see also Ford v. Hotwire, Inc.*, 2007 U.S. Dist. LEXIS 98370, at *2-5 (S.D. Cal. Nov. 19, 2007) (declining to convert motion brought pursuant to Fed. R. Civ. P. 12(b)(6) into motion for summary judgment where plaintiff included excerpts of website statements in complaint and defendant attached declaration, terms and conditions, and website information to its dismissal motion).  All three requirements are satisfied here.[3]

First, Plaintiffs' First Amended Complaint references the website; in fact, many of the marketing statements that Plaintiffs allege are actionable written warranties appear on www.wen.com, which contains a hyperlink to the Terms & Conditions.  *See* First Am. Compl. ¶ 22 (providing hyperlink to www.wen.com).  The materials attached to Guthy-Renker's Motion are either contained on www.wen.com or referenced throughout the First Amended Complaint.  *See, e.g.*, *id.* at ¶¶ 22-24, 26

---

[3] If the Court believes the material cannot be considered on a motion brought under Rule 12(b)(6), it may disregard that material without converting Guthy-Renker's Motion to one brought pursuant to Fed. R. Civ. P. 56.  *See Kopec v. Coughlin*, 922 F.2d 152, 154-55 (2d Cir. 1991) (under Rule 12(b), district courts may either exclude additional material and decide the motion on the complaint alone, or convert the motion to one for summary judgment); *see also Preskar v. United States*, 248 F.R.D. 576, 583 n.3 (E.D. Cal. 2008) ("When a party relies on matters extrinsic to the complaint, Rule 12(b)(6) expressly mandates that the court *either* disregard the extrinsic material *or* invoke the procedural protections afforded under Rule 56[.]") (emphasis added).

DEFENDANT'S REPLY I/S/O
MOTION TO DISMISS

1    (referencing marketing materials contained on www.wen.com); Jason Solano Decl.

2    (discussing information generally contained on www.wen.com); Exs. A & B to Jason

3    Solano Decl. (providing screenshots of www.wen.com).  Second, the materials are

4    central to Plaintiffs' claims because Plaintiffs allege that the statements contained in

5    those materials were actionable written warranties.  In other words, Plaintiffs have

6    put at issue www.wen.com, the content of which is central to Plaintiffs' claims.

7            Finally, Plaintiffs do not question the authenticity of the materials attached to

8    Guthy-Renker's Motion.  Because Plaintiffs' claims necessarily rely on the content

9    of the materials attached to Guthy-Renker's Motion, it is appropriate for the Court to

10   consider the Motion as being brought under Fed. R. Civ. P. 12(b)(6).  Under Fed. R.

11   Civ. P. 12(b)(6), Plaintiffs' claim for assumpsit fails to state a claim upon which relief

12   may be granted and should be dismissed.

13          **C.      Plaintiffs Fail to State a Claim for Breach of Warranty**

14          Plaintiffs argue that Guthy-Renker's marketing statements related to WEN®

15   are "written warrant[ies]" under the MMWA.  The marketing statements identified

16   by Plaintiffs as being written warranties are product descriptions that are not

17   actionable under the MMWA.  Courts in the Ninth Circuit have repeatedly found that

18   product descriptions are not actionable under the MMWA.  *See Astiana v. Dreyer's*

19   *Grand Ice Cream, Inc.*, Nos. C-11-2910 & C-11-3164, 2012 U.S. Dist. LEXIS

20   101371, at *9-10 (N.D. Cal. July 20, 2012) (dismissing with prejudice breach of

21   warranty claim under the MMWA and stating product descriptions that, at best, allege

22   only a perceived detriment related to a product are not actionable under the MMWA);

23   *see also Kosta v. Del Monte Corp.*, No. 12-cv-01722-YGR, 2013 U.S. Dist. LEXIS

24   69319, at *40 (N.D. Cal. May 15, 2013) (stating product descriptions are not written

25   warranties under the MMWA) (citing *Anderson v. Jamba Juice Co.*, No. 12-cv-1213

26   YGR, 2012 U.S. Dist. LEXIS 120723, at *3 (N.D. Cal. Aug. 25, 2012)).

27

28

8

Federal courts have found that product descriptions making claims of relative strength and efficacy are so ambiguous as to be meaningless and non-actionable under the MMWA. *See Cortina v. Wal-Mart, Inc.*, No. 13-cv-2054 BAS (DHB), 2014 U.S. Dist. LEXIS 85941, at *16-17 (S.D. Cal. June 23, 2014) (rejecting argument that "clinical strength[,]" "high absorption[,]" and "3 times better absorption" are actionable written warranties under the MMWA and dismissing MMWA claim).

Plaintiffs' rely on *Dorsey v. Rockhard Labs., LLC*, No. CV 13-07557 DDP, 2014 WL 4678969 (C.D. Cal. Sept. 19, 2014), but *Dorsey* is inapposite. In *Dorsey*, the plaintiff made specific claims as to the product not containing any ingredients that would enhance male sexual performance. *Id.* In fact, the Court found that other statements about the product, such as the marketing statement that the product was "Doctor Tested, Doctor Approved," were not independently actionable under the MMWA. *Id.* at *25.

Other courts have adhered to the general rule that marketing statements are not actionable under the MMWA where plaintiffs allege a product was ineffective despite marketing descriptions that purportedly state the effectiveness of the product at issue. *See In re Morning Song Bird Food Litig.*, No. 12cv1592 JAH (RBB), 2013 U.S. Dist. LEXIS 149153, at *35-38 (S.D. Cal. Sept. 30, 2013) (finding marketing descriptions of bird feed being fit to nourish birds and other wildlife, when plaintiffs alleged that the feed was actually hazardous to birds and other wildlife, amounted to non-actionable marketing statements; dismissing plaintiffs' express warranty and MMWA claims). While the MMWA itself does not define "defect" for purposes of determining liability under the MMWA, courts have found that product descriptions are not promises of defect-free products. *See Brazil v. Dole Foods*, 935 F. Supp. 2d 947, 966 (N.D. Cal. 2013) (stating "defect" is not defined within the MMWA; finding marketing statements contained on product label were "mere product descriptions

9

1    rather than promises of defect-free products" and dismissing plaintiff's MMWA

2    claim with prejudice).

3        Plaintiffs also claim that Guthy-Renker's marketing statements related to

4    WEN® state a period of time over which a specified performance is guaranteed by

5    construing the marketing statement "gentle enough to use every day" to mean that

6    purported performance is guaranteed into perpetuity.  *See* Pls. Mem. of P. & A. in

7    Opp. 13.  However, Plaintiffs' interpretation of the phrase "every day" – an adverb

8    to qualify the phrase "gentle enough" – is so vague as to be unworkable in light of

9    the language of the MMWA.

10       The MMWA requires that a written warranty which guarantees a product's

11   specified level of performance must state the period of time over which the

12   performance is guaranteed.  15 U.S.C. § 2301(6); *see* 16 C.F.R. 700.3(a) ("[A]

13   written affirmation of fact or a written promise of a specified level of performance

14   ***must relate to a specified period of time in order to be considered a 'written***

15   ***warranty.'  A product information disclosure without a specified time period to***

16   ***which the disclosure relates is therefore not a written warranty."*) (emphasis

17   added)).

18       This Court dismissed claims under the MMWA where, as here, the alleged

19   guarantee at issue did not reference a specific period of time.  *Viggiano v. Hansen*

20   *Natural Corp.*, 944 F. Supp. 2d 877, 898 n. 45 (C.D. Cal. 2013) (dismissing claim

21   under the MMWA and noting alleged guarantee made no reference to time and was

22   thus not a "written warranty" under the MMWA).   Other federal courts have

23   dismissed claims under the MMWA where the alleged guarantee of a specified level

24   of performance does not reference a specific period of time.  *See Dei Rossi v.*

25   *Whirlpool Corp.*, No. 2:12-cv-00125, 2013 U.S. Dist. LEXIS 153682, at *19-23

26   (E.D. Cal. Oct. 25, 2013) (dismissing claim under the MMWA because marketing

27   statement that product was energy efficient when product carried one-year warranty

28

DEFENDANT'S REPLY I/S/O
MOTION TO DISMISS

but marketing statement itself did not state a specific time period over which performance was guaranteed); *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2007 U.S. Dist. LEXIS 66721, at *5 (W.D. Wash. Sept. 10, 2007) (dismissing claim under the MMWA because marketing statement "Windows Vista Capable" lacks temporal element required to constitute "written warranty" under the MMWA).

Plaintiffs' implied warranty claims under California law are also subject to dismissal. With respect to Plaintiffs Friedman and Henry-McArthur, the Terms & Conditions contain a disclaimer of warranties, which expressly disclaims express and implied warranties, including the warranties of merchantability and fitness for a particular purpose, among others. *See* Ex. C to Jason Solano Decl. Federal courts applying California law have dismissed implied warranty claims where the defendant expressly disclaimed or limited express and implied warranties. *See Graphic Arts Sys. v. Scitex Am. Corp.*, No. CV 92-6997-WMB, 1993 U.S. Dist. LEXIS 21052, at *14-16 (C.D. Cal. June 12, 2013) (dismissing plaintiffs' breach of implied warranty claims in light of disclaimer of warranties); *Frenzel v. Aliphcom*, No. 14-cv-03587-WHO, 2014 U.S. Dist. LEXIS 177880, at *46-48 (N.D. Cal. Dec. 29, 2014) (dismissing breach of implied warranty claim in light of limit on duration of express warranty); *In re Sony Grand WEGA KDF-E A10/A20 Series Rear Projection HDTV TV Litig.*, 758 F. Supp. 2d 1077, 1100 (S.D. Cal. 2010) (manufacturers may impose limits in implied warranties). And, with respect to all Plaintiffs, their breach of implied warranty of fitness for a particular purpose claim must fail because Plaintiffs have not alleged a "specific use" that is "peculiar" to their intended use of the products. *See Stearns v. Select Comfort Retail Corp.*, 2009 U.S. Dist. LEXIS 48367, at *22-24 (N.D. Cal. June 5, 2009) (customers did not allege "specific use" that was "peculiar" to their business or their intended use of the beds, thereby leading to dismissal of their implied warranty of fitness claim); *see also Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1295 n.2 (Cal. Ct. App. 1995) (dismissing

1   implied warranty of fitness for a particular purpose claim where plaintiffs failed to

2   identify a specific use that was peculiar to them and only identified the general

3   purpose of the product at issue).

4        Because the marketing statements that Plaintiffs allege are actionable "written

5   warranties" are, in actuality, product descriptions and marketing statements,

6   Plaintiffs have failed to state a claim as to breach of warranty under the MMWA.

7   Plaintiffs have failed to state a claim for breach of warranty of fitness for a particular

8   purpose; and, Plaintiffs Friedman and Henry-McArthur have failed to state a claim

9   for any breach of implied warranties

10                              **CONCLUSION**

11       For the foregoing reasons, Guthy-Renker respectfully requests that this Court

12  compel arbitration and dismiss, or in the alternative, stay, the First Amended

13  Complaint in its entirety as to Plaintiffs Friedman and Henry-McArthur.[4]   Guthy-

14  Renker further requests that Counts I and IV of the First Amended Complaint be

15  dismissed for failure to state a claim as to Plaintiff Miller and as to Plaintiffs

16  Friedman and Henry-McArthur if their claims have not otherwise been dismissed

17  pursuant to the FAA.

18  DATED: February 6, 2015            Respectfully submitted,

19                                     By: /s/ Jonathan M. Jackson

20                                     LEWIS WAGNER, LLP
                                       Dina M. Cox
21                                     LATHAM & WATKINS LLP
                                       David J. Schindler
22                                     Jonathan M. Jackson
                                       Attorneys for Defendant Guthy-Renker LLC
23

24  _____

25  [4] The Court should not grant Plaintiffs leave to amend their First Amended Complaint.  Granting
    leave to amend is discretionary.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  When a plaintiff has
26  previously amended its complaint, a district court's discretion to deny leave to amend is
    "particularly broad."  *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th
27  Cir. 2013) (citing *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).  Because
    Plaintiffs have previously amended their original Complaint, the Court should, in its discretion,
28  deny Plaintiffs request for leave to amend their First Amended Complaint.