O

# United States District Court
# Central District of California

| | |
|---|---|
| AMY FRIEDMAN and JUDI MILLER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GUTHY-RENKER LLC and WEN BY CHAZ DEAN, INC.,<br><br>Defendants. | Case No. 2:14-cv-06009-ODW(AGRx)<br><br>**ORDER DENYING DEFENDANT'S MOTION TO ENJOIN STATE COURT PROCEEDINGS [154]** |

## I. INTRODUCTION

Plaintiffs Amy Friedman and Judi Miller bring this putative class action lawsuit against Defendants Guthy-Renker, LLC and Wen By Chaz Dean, Inc., alleging that Defendants' "WEN Cleansing Conditioner" line of haircare products caused their hair to fall out. In April 2016, the parties reached a class-wide settlement of all claims. Guthy-Renker now moves to temporarily enjoin three similar but non-class lawsuits pending in state court, arguing that those proceedings threaten the settlement in this action. For the reasons discussed below, the Court **DENIES** Guthy-Renker's Motion. (ECF No. 154.)[1]

---

[1] After considering the papers filed in support of and in opposition to the Motion, the Court deems the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L. R. 7-15.

## II. FACTUAL BACKGROUND

Wen By Chaz Dean created and developed a haircare product called "WEN Cleansing Conditioner," which Guthy-Renker manufactured, marketed, and sold throughout the United States. (Second Am. Compl. ("SAC") ¶ 2, ECF No. 69.) According to Plaintiffs, this product causes hair loss. (*Id.* ¶ 3.) Plaintiffs now assert a variety of false advertising and personal injury claims against Defendants on behalf of all persons in the United States who purchased the product between August 1, 2009, and the present. (*Id.* ¶¶ 42, 52–118.)

In April 2016, after conducting significant discovery and participating in four mediation sessions, the parties reached a class-wide settlement of all claims. (ECF Nos. 135, 137, 140, 144.) Notably, the settlement includes all WEN haircare products, not just the WEN Cleansing Conditioner. (Settlement Agreement § 2O, Pl.'s Counsel Decl. ¶ 7, Ex. A, ECF No. 153-3.) Soon thereafter, the parties jointly moved for class certification and preliminary approval of the class settlement. (ECF No. 153.) On August 1, 2016, the Court held a hearing on the Motion and discussed with counsel its concerns regarding certain settlement terms and the class notice. (ECF No. 155.) The Court continued the hearing to September 19, 2016, to give the parties time to iron out these problems. (*Id.*)

However, this is not the only lawsuit pending against Guthy-Renker concerning its WEN haircare product line. Currently pending before Judge Susan Bryant-Deason of the Los Angeles Superior Court are three lawsuits that make essentially the same allegations against Guthy-Renker concerning the WEN Cleansing Conditioner and other WEN haircare products as Plaintiffs in this lawsuit do.[2] (*See* Cox Decl. ¶¶ 2–6, Exs. A–C, ECF No. 154-1; Second Am. Compl., *Bakarat et al. v. Guthy-Renker LLC*, Case No. BC 607925 (L.A. Super. Ct. Apr. 1, 2016); Compl., *Harris et al. v. Guthy-Renker LLC*, Case No. BC 609379 (L.A. Super. Ct. Feb. 5, 2016); Compl., *Fisher et*

---

[2] There are also four other such lawsuits pending around the country. (Mot. 5 n.1.) These have all been stayed pending approval of the class settlement in this action. (*Id.*)

*al. v. Guthy-Renker LLC*, Case No. BC626484 (L.A. Super. Ct. July 6, 2016).) However, those three lawsuits are brought on behalf of 75 permissively-joined plaintiffs, and do not assert class claims or seek any sort of class-wide relief. (*Id.*) The plaintiffs in the *Harris* case have propounded significant discovery on Guthy-Renker, including 74 requests for production of documents that broadly request all documents relating in any way to the advertising and safety of all WEN haircare products. (Cox Decl. ¶¶ 7–9.) Guthy-Renker believes there are over one million responsive documents, and thus responding to this discovery will take thousands of attorney hours and could cost them close to $1 million. (Mot. 9–10, ECF No. 154.) Guthy-Renker objected to the discovery requests, which led to the *Harris* plaintiffs filing multiple motions to compel before Judge Bryant-Deason.

In June and July 2016, Guthy-Renker filed multiple requests before Judge Bryant-Deason to stay all three lawsuits pending consummation of the class-wide settlement in this case. (Cox Decl. ¶¶ 11–13, Exs. G–I.) On July 26, 2016, Guthy-Renker also moved this Court to enjoin the state court actions for the same period of time. (ECF No. 154.) On August 12, 2016, Judge Bryant-Deason stayed the three actions until November 8, 2016, which the court calculated to be sufficient time for (1) this Court to consider and grant preliminary approval for the settlement, (2) for Guthy-Renker to send out notice to the class members, and (3) for the state court plaintiffs to consider whether or not to opt out of the settlement. (Opp'n 2–3, ECF No. 163.) However, the court also set a hearing on the *Harris* plaintiffs' motions to compel for November 8, 2016, thus requiring the parties to meet and confer and brief issues relating to those motions during the stay. (Reply 2, ECF No. 166.)

Guthy-Renker contends that this stay is insufficient in scope and length, and thus presses on with the Motion to Enjoin that it filed with this Court. (*Id.* at 2–4.) Counsel for the plaintiffs in all three state court actions have filed oppositions to the Motion to Enjoin. (ECF Nos. 160, 163.) That Motion is now before this Court for consideration.

3

### III. LEGAL STANDARD

District courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This power is limited, however, by the Anti-Injunction Act, which prohibits federal courts from "grant[ing] an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Anti-Injunction Act "rests on the fundamental constitutional independence of the States and their courts," *Atl. Coast Line R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970), and is designed "to prevent friction between federal and state courts by barring federal intervention in all but the narrowest of circumstances." *Sandpiper Vill. Condo. Ass'n, Inc. v. Louisiana-Pac. Corp.*, 428 F.3d 831, 842 (9th Cir. 2005). Thus, "[t]he Act creates a presumption in favor of permitting parallel actions in state and federal court." *Bennett v. Medtronic, Inc.*, 285 F.3d 801, 806 (9th Cir. 2002).

Accordingly, the Supreme Court has construed the "necessary in aid of jurisdiction" exception narrowly. To fall within this exception, the state court action must "so interfer[e] with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atl. Coast Line R. Co.*, 398 U.S. at 295; *see also Bennett*, 285 F.3d at 806 ("[A] parallel in personam state court proceeding does not, in and of itself, present the sort of impediment envisioned by *Atlantic Coast*. [Rather, p]arallel in personam actions in state court seriously impede a federal court's ability to adjudicate a case only where the state court proceeding threatens to 'render the exercise of the federal court's jurisdiction nugatory.'" (quoting *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996))). "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. The explicit wording of § 2283 itself implies as much, and the fundamental principle of a dual system of courts leads

inevitably to that conclusion." *Atl. Coast Line R. Co.*, 398 U.S. at 297.

## IV. DISCUSSION

Guthy-Renker argues that the parallel state court proceedings constitute a serious threat to the pending class-wide settlement in this matter for several reasons. First, the burdensome discovery requests that the *Harris* plaintiffs have served are consuming substantial resources that Guthy-Renker could otherwise dedicate to ensuring that the settlement in this action is approved and carried out. (Mot. 8–12.) Second, and relatedly, the discovery requests are eviscerating the benefits of the class settlement—i.e., a speedy and inexpensive method of adjudicating the personal injury and false advertising claims of the class members—before those state court plaintiffs have even had an opportunity to consider the settlement. (*See id.* at 11, 18.) Third, counsel for the state court plaintiffs have supposedly retained a significant number of additional plaintiffs that are not, as of yet, named in those lawsuits. According to Guthy-Renker, if these new plaintiffs are added to the existing lawsuits, the class-wide settlement's confidential "opt out cap" may be breached,[3] thus jeopardizing the settlement. (*Id.* at 17.) The Court finds none of these reasons convincing.

Courts analyzing the necessary in aid of jurisdiction exception to the Anti-Injunction Act typically look at three factors in determining whether an injunction is appropriate. "First, we look to the nature of the federal action to determine what kinds of state court interference would sufficiently impair the federal proceeding." *In re Diet Drugs*, 282 F.3d 220, 234 (3d Cir. 2002). "Second, we assess the state court's actions, in order to determine whether they present a sufficient threat to the federal action." *Id.* "And finally, we consider principles of federalism and comity, for a primary aim of the Anti–Injunction Act is to prevent needless friction between the

---

[3] The settlement agreement gives Guthy-Renker the option of withdrawing from the settlement if more than a certain number of class members opt out of the settlement. (Settlement Agreement § 18A, Pl.'s Counsel Decl. ¶ 7, Ex. A, ECF No. 153-3.) The threshold number itself is confidential. (*Id.*)

state and federal courts." *Id.* (internal quotation marks omitted).

## A. Nature of the Federal Action

With respect to the first inquiry, several circuit courts, including the Ninth Circuit, have concluded that "a federal court entertaining complex litigation, especially when it involves a substantial class of persons from multiple states, or represents a consolidation of cases from multiple districts, may appropriately enjoin state court proceedings in order to protect its jurisdiction." *Id.* at 235; *see also In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1333 (5th Cir. 1981) (enjoining state action that threatened "an enormous [federal] class action in which more than fifty private treble damage actions [were] brought on behalf of all purchasers of corrugated containers and sheets against thirty-seven manufacturers, alleging an antitrust conspiracy"). "The threat to the federal court's jurisdiction posed by parallel state actions is particularly significant where there are conditional class certifications and impending settlements in federal actions." *Diet Drugs*, 282 F.3d at 236. *Compare, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998) (enjoining a state court action that threatened a nationwide class action settlement in a consolidated multidistrict litigation case); *Carlough v. Amchem Prod., Inc.*, 10 F.3d 189, 199 (3d Cir. 1993) (enjoining a state court action that threatened a nationwide class action settlement); *Battle v. Liberty Nat. Life Ins. Co.*, 877 F.2d 877, 881 (11th Cir. 1989) (same); *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 338 (2d Cir. 1985) (same), *with Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1103 (9th Cir. 2008) (declining to enjoin state action where "[the federal action] was not an MDL case; discovery was not complete; no class settlement was imminent, in fact, as far as the record shows no serious settlement progress had been made"); *Sandpiper Vill. Condo. Ass'n*, 428 F.3d at 845 (declining to enjoin state action in part because the federal class action settlement was approved years ago and final judgment had already been entered); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 134 F.3d 133, 145 (3d Cir. 1998)

(necessary in aid of jurisdiction exception did not apply because no settlement was pending).

The nature and posture of the federal action here makes an injunction potentially appropriate. After spending hundreds of thousands of dollars on pre-certification discovery, as well as engaging in four mediation sessions, the parties reached a complex settlement of all claims on behalf of a nationwide class. Moreover, this settlement is at a precarious stage, as certification of the nationwide class and preliminary approval of the settlement is currently pending before this Court. Any state court proceedings that threaten to thwart this settlement would effectively threaten this Court's jurisdiction over the federal action. *Diet Drugs*, 282 F.3d at 236.

## B. Nature of the State Action

Under the second inquiry, however, the mere existence of a parallel state court proceeding is insufficient to enjoin that proceeding. Instead, the state court proceeding must substantially threaten the viability of the pending class-wide settlement, such as by attempting to effect a mass opt-out from that settlement. For example, in *Diet Drugs*, the Third Circuit held that a parallel state court action that sought to opt out all West Virginia residents from a federal nationwide class action settlement constituted "an intentional 'preemptive strike' against the federal action" that substantially threatened the federal court's ability to craft a viable settlement. 282 F.3d at 237; *see also Hanlon*, 150 F.3d at 1024 (injunction appropriate where state court plaintiff "sought to represent himself and all other Georgia consumers . . . , and asserted the right to opt-out all Georgia customers from the federal class action"); *Carlough*, 10 F.3d at 203 (injunction appropriate where "the stated purpose of the [state court] suit is to challenge the propriety of the federal class action, . . . and to obtain rulings from the West Virginia state court regarding the West Virginia class members' right to opt out of the federal action"); *Baldwin-United Corp.*, 770 F.2d at 337 (injunction appropriate where state attorneys general sought to bring derivative claims on behalf of the same consumers that were the subject of the federal class

7

action settlement, reasoning that "[i]f states or others could derivatively assert the same claims on behalf of the same class or members of it, there could be no certainty about the finality of any federal settlement"). However, where the state court action presents no particular threat to consummating a class settlement, federal courts have typically declined to enjoin the state court action. *Sandpiper Vill. Condo. Ass'n*, 428 F.3d at 845 (injunction inappropriate in part because the plaintiff in the state court action "was not a class member and did not seek to represent class members"); *Wilson v. Airborne, Inc.*, No. EDCV07-770VAP(OPX), 2007 WL 5010298, at *3 (C.D. Cal. Nov. 28, 2007) ("Unless the New Jersey plaintiffs persist in seeking class action relief in their case after the certification of any nationwide settlement class in this case, there can be no showing that their pending case poses a threat to this Court's jurisdiction over the settlement.").

The state court actions here do not present any substantial threat to the settlement in this case. The plaintiffs in those actions do not purport to represent a class of persons, and are not attempting to use those actions as vehicles to opt out absent class members en-masse. Nor are they otherwise attempting to interfere with this Court's ability to shepherd through a nationwide class settlement. Rather, the state court actions are simply individual actions against the same defendants concerning the same subject matter as this action.[4] "[A]n 'injunction cannot issue to restrain a state court action' simply because it involves 'the same subject matter at issue before the federal court.'" *Sandpiper Vill. Condo. Ass'n*, 428 F.3d at 844 (citations omitted).

The Court is not convinced that the burdensome discovery in the *Harris* matter warrants enjoining that proceeding. First, the fact that it may be more efficient or

---

[4] The partial stay imposed by Judge Bryant-Deason further ameliorates any threat the state court actions could pose to this proceeding. Guthy-Renker contends that the stay is insufficient both in scope and length, but for the reasons discussed herein, the Court is not persuaded that it is necessary to pile a federal court injunction on top of the stay.

economical for Guthy-Renker not to spend money responding to discovery while the class-wide settlement in this action is processed is not a sufficient reason to enjoin state proceedings. *Diet Drugs*, 282 F.3d at 234 (injunction not warranted just because "th[e] state actions risk some measure of inconvenience or duplicative litigation"). Parallel state court actions are by their very nature inefficient and burdensome for the defendant, in that the same issue against the same defendant is being litigated twice at the same time. Nevertheless, the Anti-Injunction Act reflects a policy decision that some degree of efficiency must be sacrificed to prevent unnecessary friction between state and federal courts, and that only threats to the federal court's jurisdiction warrants disturbing the "fundamental constitutional independence of the States and their courts." *Atl. Coast Line R. Co.*, 398 U.S. at 287. As a result, Guthy-Renker cannot just point to efficiencies that would be gained by enjoining the state proceedings, because a loss of efficiency generally does not threaten a federal court's jurisdiction.[5] *See Negrete*, 523 F.3d at 1101; *Diet Drugs*, 282 F.3d at 234. Rather, to show a threat to this Court's jurisdiction, Guthy-Renker must show that the discovery sought in the *Harris* action was intended to or has the effect of thwarting the federal class action settlement entirely. Guthy-Renker has not done this.

Second, if, as Guthy-Renker contends, the majority of the discovery sought in *Harris* is irrelevant and overbroad, it should first move the state court for a protective order (or await the state court's decision on the plaintiffs' motions to compel) before moving this Court to enjoin the state court action. From a purely practical standpoint, this Court cannot evaluate the extent to which the state action truly threatens the federal action unless and until the state court decides the extent to which Guthy-

---

[5] In fact, it is not even clear that the requested injunction would ultimately save Guthy-Renker the expense of responding to the pending discovery, for the *Harris* plaintiffs have already proclaimed their intent to opt out of the settlement and continue pursuing their individual actions. (*See* Opp'n 3, ECF No. 163; Opp'n, ECF No. 160; Mot. 17.) While it is true that some of these plaintiffs might change their mind upon receiving notice of the settlement, it is nevertheless far from certain that the efficiencies Guthy-Renker envisions will be realized.

Renker must respond to the challenged discovery. Moreover, considerations of comity and federalism dictate that this Court should refrain from intruding on the state court's domain before that court has had a chance to decide issues that could moot the need for an injunction. Because the propriety of the *Harris* discovery is still pending before the state court, this Motion is premature.

Finally, the Court fails to see how the settlement's confidential opt-out threshold warrants an injunction. Preventing the state court lawsuits from proceeding, or enjoining other putative class members from filing additional individual lawsuits, does not prevent these persons from opting out of the settlement in this action—or even make their opting out less likely. In addition, as Guthy-Renker never filed any paper work indicating what this confidential opt-out threshold actually is, the Court has no way of judging whether the parallel state court actions could somehow present an actual threat of reaching that number.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** Guthy-Renker's Motion.

**IT IS SO ORDERED.**

August 26, 2016

                                                _____
                                                      **OTIS D. WRIGHT, II**
                                               **UNITED STATES DISTRICT JUDGE**