**O**

# United States District Court
# Central District of California

AMY FRIEDMAN and JUDI MILLER,
on behalf of themselves and all others
similarly situated,

Plaintiffs,

v.

GUTHY-RENKER, LLC and WEN BY
CHAZ DEAN, INC.,

Defendants.

Case No. 2:14-cv-06009-ODW(AGRx)

**ORDER GRANTING APPLICATION TO FILE UNDER SEAL [173]**

## I.   INTRODUCTION

Plaintiffs Amy Friedman and Judi Miller bring this putative class action lawsuit against Defendants Guthy-Renker, LLC and Wen By Chaz Dean, Inc., alleging that Defendants' "WEN Cleansing Conditioner" line of haircare products caused their hair to fall out.  In April 2016, the parties reached a class-wide settlement of all claims. Under the settlement agreement, Defendants reserve the right to withdraw from the settlement if more than a certain number of class members opt out of the class.  The parties recently filed their motion for preliminary approval of the class settlement, Fed. R. Civ. P. 23(e), and Guthy-Renker now seeks to file under seal the actual number of opt-outs that will trigger its right to withdraw.  (ECF No. 173.)  For the reasons discussed below, the Court **GRANTS** Guthy-Renker's Application.

/ / /

## II.   LEGAL STANDARD

"Historically, courts have recognized a 'general right to inspect and copy public records and documents, including judicial records and documents.'"   *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).   Thus, "a strong presumption in favor of access [to such records] is the starting point."   *Id.*   Generally, "[a] party seeking to seal a judicial record then bears the burden of overcoming this strong presumption by meeting the compelling reasons standard.   That is, the party must articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure . . . ."   *Id.* at 1178–79.   However, where the documents or information the parties seek to file under seal are unrelated or only "tangentially related" to the underlying claims, the presumption of public access can be overcome simply by showing "good cause."   *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016).

"What constitutes a 'compelling reason' [to seal court records] is 'best left to the sound discretion of the trial court.'"   *Id.* (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).   "The factors relevant to [such] a determination . . . include the 'public interest in understanding the judicial process and whether disclosure of the material could result in improper use of the material [such as] for scandalous or libelous purposes or infringement upon trade secrets.'"   *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995) (citations and footnote omitted); *see also Kamakana*, 447 F.3d at 1179 ("In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes' . . . ." (quoting *Nixon*, 435 U.S. at 598)).   "After taking all relevant factors into consideration, the district court must base its decision on a compelling reason and articulate the factual basis for its ruling, without relying on hypothesis or conjecture."   *Hagestad*, 49 F.3d at 1434.

/ / /

2

## III.   DISCUSSION

### A.   Applicable Standard

The Court must first decide whether the "compelling reasons" standard or the "good cause" standard applies—that is, whether the opt-out threshold is more than "tangentially related" to the underlying claim. *Ctr. for Auto Safety*, 809 F.3d at 1097. Here, the opt-out threshold is being filed in support of the parties' motion for preliminary approval of the class-wide settlement.   The settlement of a claim obviously has more than a tangential relationship to the claim, and in the class action context, the granting of a motion for preliminary approval is necessary to effectuate that settlement.  *See* Fed. R. Civ. P. 23(e); *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) ("Approval of a class action settlement requires a two-step process—a preliminary approval followed by a later final approval.").  Such a motion must, of course, "disclose all terms of the settlement or compromise" to the Court. Fed. R. Civ. P. 23(e)(2) advisory committee's note to 1966 Amendment.  And because a breach of the opt-out threshold gives Defendants the right to scuttle the settlement entirely, it surely constitutes a material term that the Court must consider in connection with the motion.   As a result, the opt-out threshold is more than tangentially related to the underlying claim, and thus the parties must show compelling reasons to file that information under seal.  *See Thomas v. Magnachip Semiconductor Corp.*, No. 14-CV-01160-JST, 2016 WL 3879193, at *7 (N.D. Cal. July 18, 2016) (determining that the opt-out threshold filed in support of a motion for preliminary approval of class settlement is more than "tangentially related" to the merits of the case, and thus the "compelling reasons" standard applies).

### B.   Compelling Reasons

#### 1.   Public Interest

To determine whether the compelling reasons standard is met, the Court first weighs the public interest in access to the information.  *See Hagestad*, 49 F.3d at 1434.  The Plaintiffs in this lawsuit brought claims on behalf of all persons in the

United States who used any WEN haircare product in the last seven years—a class that consists of more than six million people.  (Mot. 19–20, ECF No. 153-1.)  The parties now seek to certify this nationwide class and seek approval of a settlement that would bind any person in the class that does not affirmatively opt out of it. Transparency is paramount when the Court is adjudicating the fairness of a settlement that will bind absent class members, particularly when it concerns a class of this size.

Guthy-Renker argues that the opt-out threshold itself is not important to any individual class members' decision to either remain in or opt out of the class.  (Appl. ¶ 6, ECF No. 173.)  This is likely true for most, but not necessarily all, class members. The opt-out threshold is relevant only insofar as it may cause Defendants to withdraw from the settlement, in which case the class would not receive their promised payout. If this happens, the class members will still be left in the same position as if they had originally opted out of the settlement (at least in terms of being able to pursue an individual action).  As a result, for most class members, the opt-out threshold has no logical impact on their decision to opt out or not.

There is, however, a small subset of persons who may *not* be left in the same position if the settlement falls through, and thus for whom knowledge of the opt-out threshold could make a real difference.  For example, if the statute of limitations on a class member's individual claim is close to expiring at the time he or she receives notice of the settlement, he or she will certainly be interested in knowing how likely Defendants are to withdraw from the settlement.  The only way to assess this likelihood is to know what the opt-out threshold actually is, so that the class member can use his or her resources and judgment to predict whether or not that threshold will be reached.  If they believe there is only a low risk of the threshold being exceeded, they might elect to join the settlement; but if they deem the risk high, they may think it prudent to opt out of the settlement and file an individual action before the statute of limitations expires.  Thus, contrary to Guthy-Renker's argument, there is a legitimate interest in publicly disclosing this information beyond just the general interest in

4

1    maintaining transparency.

2        **2.    Potential for Abuse**

3        On the other hand, Guthy-Renker is correct that there is a significant potential
4    for abuse of this information.  Class action litigation is riddled with "professional
5    objectors": attorneys for class members who extort additional payments from the
6    parties in exchange for not delaying or tanking the whole settlement (e.g., by filing
7    objections or appeals).  *See, e.g.*, *In re Polyurethane Foam Antitrust Litig.*, No. 1:10
8    MD 2196, 2016 WL 1452005, at *2 (N.D. Ohio Apr. 13, 2016).  "[P]rofessional
9    objectors undermine the administration of justice by disrupting settlement in the hopes
10   of extorting a greater share of the settlement for themselves and their clients."  *In re*
11   *Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010).  Publicly
12   disclosing the opt-out threshold would practically invite professional objectors to
13   threaten the settlement by soliciting opt-outs.  *See In re HealthSouth Corp. Sec. Litig.*,
14   334 F. App'x 248, 250 n.4 (11th Cir. 2009).

15       The Court concludes that this potential for abuse outweighs the interest in
16   public access to this information.  It makes little sense to open up the entire settlement
17   to attack on the off chance that a small subset of class members may perform the
18   rather elaborate analysis needed to determine the likelihood of Defendants
19   withdrawing from the settlement—not to mention the irony that making this
20   information available to them dramatically increases the risk of the threshold being
21   met.  Moreover, even if the limitations period expires on a class members' individual
22   claim under these circumstances, those claims would likely be subject to equitable
23   tolling.  *See, e.g.*, *McDonald v. Antelope Valley Cmty. Coll. Dist.*, 45 Cal. 4th 88, 100
24   (2008) (equitable tolling of the statute of limitations "applies when an injured person
25   has several legal remedies and, reasonably and in good faith, pursues one.  Thus, it
26   may apply where . . . a first action, embarked upon in good faith, is found to be
27   defective for some reason." (citations, brackets, and internal quotation marks
28   omitted)).

For these reasons, the Court concurs with the numerous other courts that have held that the opt-out threshold should be kept confidential. *Thomas*, 2016 WL 3879193, at *7; *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 329 (C.D. Cal. 2016); *In re Skelaxin (Metaxalone) Antitrust Litig.*, No. 1:12-MD-2343, 2015 WL 1486709, at *2 (E.D. Tenn. Mar. 31, 2015); *In re Remeron End-Payor Antitrust Litig.*, No. CIV. 02-2007 FSH, 2005 WL 2230314, at *18 (D.N.J. Sept. 13, 2005); *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 253 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004); *see also* Fed. R. Civ. P. 23(e)(2) advisory committee's note to 1966 Amendment ("Further inquiry into the agreements identified by the parties should not become the occasion for discovery by the parties or objectors. . . . Some agreements may include information that merits protection against general disclosure.").

## IV.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Guthy-Renker's Motion. Guthy-Renker should file and serve this information in accordance with Local Rules 79-5.2.2(c) and 79-5.3.

**IT IS SO ORDERED.**

September 26, 2016

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**