Neville L. Johnson (SBN 66329)
njohnson@jjllplaw.com
Douglas L. Johnson (SBN 209216)
djohnson@jjllplaw.com
Jordanna G. Thigpen (SBN 232642)
jthigpen@jjllplaw.com
**JOHNSON & JOHNSON, LLP**
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone:  (310) 975-1080
Facsimile:  (310) 975-1095

William Anderson, (*Pro Hac Vice*)
wanderson@cuneolaw.com
Charles J. LaDuca, (*Pro Hac Vice*)
charles@cuneolaw.com
Michael J. Flannery (SBN 196266)
mflannery@cuneolaw.com
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW Suite 200
Washington, DC 20016
Telephone:  (202) 789-3960
Facsimile:  (202) 789-1813

Brian W. Warwick, (*Pro Hac Vice*)
bwarwick@varnellandwarwick.com
Janet R. Varnell, (*Pro Hac Vice*)
jvarnell@varnellandwarwick.com
**VARNELL & WARWICK, P.A.**
P.O. Box 1870
Lady Lake, FL  32158
Telephone:  (352) 753-8600
Facsimile:  (352) 504-3301

*Attorneys for Plaintiffs and the Proposed Class*

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| AMY FRIEDMAN, JUDI MILLER, KRYSTAL HENRY-MCCARTHUR, and LISA ROGERS on behalf of themselves and all others similarly situated,<br><br>**Plaintiffs,**<br><br>v.<br><br>**GUTHY-RENKER LLC and WEN BY CHAZ DEAN, INC.,** Defendants. | Case No. **2:14-cv-06009-ODW- AGR**<br>**MEMORANDUM OF LAW IN SUPPORT OF CLASS COUNSELS' UNOPPOSED MOTION FOR ATTORNEYS' FEES AND COSTS AND CLASS REPRESENTATIVES' FEE AWARD IN CLASS ACTION SETTLEMENT**<br><br>Judge:  Hon. Otis D. Wright II<br>Motion Date: June 5, 2017<br>Time:  1:30 PM<br> Location:  Courtroom 5D |

## **TABLE OF CONTENTS**

**I.   INTRODUCTION**…………….…..……………………………..1

**II.   PERTINENT PROCEDURAL HISTORY**……………………………1

    **A. Litigation History**……………………………………………1

    **B. Settlement History**…………………………………….....3

**III.   THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST
FOR A BENCHMARK AWARD OF APPROXIMATELY 25% OF
THE COMMON FUND FOR ATTORNEYS' FEES AND
COSTS**…………………………………………….…….…...5

    **A. Results Obtained for the Class**……………..……………..7

    **B. The Efforts Expended by Counsel**…………………………8

    **C. Counsel's Experience and Skill**…………………………10

    **D. Complexity of the
Issues**…………………………………………………...11

    **E. The Risk of Non-Payment Assumed By Counsel Was
Substantial**…………………………………………….....11

    **F. The Reaction of the Class**…………………….....…………..12

    **G. Class Counsel's Request for $6.5 Million in Attorneys' Fees and
Costs Represents Less Than 25% of the Common Fund Benefit to
the Class, and is Commensurate With the Ninth Circuit
Benchmark**………………………………………………12

**IV.   ALTERNATIVELY, THE FEES REQUESTED ARE REASONABLE
UNDER THE LODESTAR/MULTIPLIER APPROACH**……………...13

    **A. The Hours Expended Are
Reasonable**…………………………………………...…...14

    **B. Class Counsel's Hourly Rates Are Reasonable In This Market**…15

    **C. Enhancement of the Lodestar is Appropriate, Necessary, and**

**Justified By the Facts and Circumstances of This Case**…..……...18

**V.      INCENTIVE AWARDS TO CLASS REPRESENTATIVES SHOULD BE FINALLY APPROVED**……………………..………………………...21

**VI.     CONCLUSION**………………………………………………...…...25

TABLE OF CONTENTS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Aboudi v. T-Mobile USA, Inc.*

    2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015) ................................... 14

*Blackwell v. Foley*

    724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ............................................. 15

*Camacho v. Bridgeport Financial, Inc.*

    523 F.3d 973, 979 (9th Cir. 2008) ............................................................... 16

*Chambers v. Whirlpool Corp.*

    2016 WL 5922456 at *14 (C.D. Cal. Oct. 11, 2016) .......................17-18, 25

*Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)*

    19 F.3d 1291, 1299-1300 (9th Cir. 1994) ..................................................... 11

*City of Burlington v. Dague*

    505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992) ............................. 19

*City of Omaha Police & Fire Ret. Sys. v. LHC Grp.*

    2015 WL 965696, *8 (W.D. La. 2015) ....................................................... 20

*Cook v. Niedert*

    142 F.3d 1004, 1016 (7th Cir. 1998) ........................................................... 22

*Craft v. County of San Bernardino*

    624 F.Supp.2d 1113, 1116 (C.D. Cal. 2008)...........................................7, 14

*Fischel v. Equitable Life Assurance Soc'y of the U.S,*

    307 F.3d 997, 1006 (9th Cir. 2002) ........................................................7, 14

*Gates v. Rowland*

    39 F.3d 1439, 1449 (9th Cir. 1994) ............................................................. 15

*Hanlon v. Chrysler Corp.*

    150 F.3d 1011, 1029 (9th Cir. 1998)............................................................ 18

*Hensley v. Eckerhart*
    461 U.S. 424, 431, 103 S. Ct. 1933 (1983) .................................................... 10

*Hawthorne v. Umpqua Bank*
    2015 WL 1927342, *8 (N.D. Cal. 2015) .................................................... 24

*In re Activision Securities Litigation*
    723 F.Supp. 1373, 1378-79 (N.D. Cal. 1989) ............................................. 13

*In re Bluetooth Headset Prods. Liab. Litig.*
    654 F.3d 935, 942 (9th Cir. 2011)................................................................ 13

*In re Continental Ill. Sec. Litig.*
    962 F.2d 566, 571 (7th Cir. 1992) .............................................................. 22

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liability Litig.*
    55 F.3d 768, 820 (3d Cir. 1995) .................................................................. 13

*In re Heritage Bond Litigation*
    2005 WL 1594403, *18 (C.D. Cal. 2005)..................................................... 7

*In re Omnivision Technologies, Inc.*
    559 F.Supp.2d 1036, 1047-48 (N.D. Cal. 2008) ......................................... 13

*In re Oracle Sec. Litig., No. 90-0931*
    1994 U.S. Dist. LEXIS 21593, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ........................................................................................................... 22

*In re Pacific Enterprises Securities Litigation*
    47 F.3d 373, 379 (9th Cir. 1995) ................................................................ 12

*In re Rite Aid Corp. Securities Litigation*
    396 F.3d 294, 307 (3rd Cir. 2005).......................................................... 7, 14

*In re Sears, Roebuck &Co. Front–loading Washer Prods. Liab. Litig.*
    2016 WL772785, at *2 (N.D. Ill. 2016) ...................................................... 20

*In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*

TABLE OF AUTHORITIES

295 F.R.D. 438, 464 (C.D. Cal. 2014) ....................................................16-17

*In re Washington Public Power Supply System Securities Litigation*

19 F.3d 1291, 1295 (9th Cir. 1994) .................................................. 6

*Howard v. Schaniel*

(1980) 113 Cal.App.3d 256 ........................................................ 15

*Kerr v. Screen Extras Guild, Inc.*

526 F.2d 67, 70 (9th Cir. 1975) ............................................18-19

*Ketchum v. Moses*

24 Cal.4th 1122, 1133, 1138 (2001) ........................................ 21

*Mandujano v. Basic Vegetable Prods. Inc*

541 F.2d 832, 837 (9th Cir. 1976) ............................................ 12

*Lewis v. Anderson*

692 F.2d 1267, 1270 (9th Cir. 1982) .......................................... 6

*Parkinson v. Hyundai Motor Am.*

796 F.Supp.2d 1160, 1170 (C.D. Cal. 2010) ............................. 19

*Paul, Johnson, Alston & Hunt v. Graulty*

886 F.2d 268, 271 (9th Cir. 1989) ........................................6, 12

*Pooshs v. Philip Morris USA, Inc.*

(2011) 51 Cal.4th 788 .............................................................. 8

*Resnick v. Frank*

779 F.3d 934, 947 (9th Cir. 2015) ............................................ 24

*Rodriguez v. W. Pub'g Corp.*

563 F.3d 948, 958 (9th Cir. 2009) ............................................ 21

*Serrano v. Unruh*

32 Cal.3d 621, 640-44 (1982) .................................................. 16

*Six Mexican Workers v. Arizona Citrus Growers*

904 F.2d 1301, 1311 (9th Cir. 1990) ......................................7, 12

*Smith v. Tower Loan of Miss., Inc.*

    216 F.R.D. 338, 368 (S.D. Miss. 2003) ........................................................ 22

*Staton v. Boeing Co.*

    327 F.3d 938, 967 (9th Cir. 2003)........................................................ 6, 21, 22

*Stetson v. Grissom*

    821 F.3d 1157, 1166 (9th Cir. 2016) ........................................................ 18

*Southeast Legal Defense Group v. Adams*

    657 F.2d 1118, 1122 (9th Cir. 1981)........................................................ 6

*Steiner v. Williams*

    2001 WL 604035, at *4 (S.D.N.Y. May 31, 2001) ........................................ 6

*Torrisi v. Tucson Elec. Power Co.,*

    8 F.3d 1370, 1376 (9th Cir. 1993)........................................................ 7

*Van Vranken v. Atlantic Richfield Co.*

    901 F.Supp. 294, 297-98 (N.D. Cal. 1995) ........................................12-13, 19

*Vizcaino v. Microsoft Corp.,*

    290 F.3d 1043, 1050 (9th Cir. 2002)........................................................ 7, 14, 19

*White v. City of Richmond*

    559 F. Supp. 127, 133 (N.D. Cal. 1982) ........................................................ 20

*Wing v. Asarco, Inc.*

    114 F.3d 986, 989 (9th Cir. 1997)........................................................ 18

**STATUTES**

Fed. R. Civ. P. 23 ............................................................................*passim*

**OTHER AUTHORITIES**

5-23 MOORE'S FEDERAL PRACTICE – CIVIL § 23.124(b)(i) ............................ 8

## I.      INTRODUCTION

Plaintiffs[1] submit this memorandum in support of Class Counsels'[2] Attorney's Fees and Costs and in support of the Named Plaintiffs' Incentive Awards provided under the Settlement Agreement and Release of Claims ("Agreement" or "Settlement Agreement") that is before this Court.  Under the terms of the Settlement Agreement between Plaintiffs Friedman, Miller, Henry-McArthur and Rogers (collectively, "Plaintiffs") and Defendants Guthy-Renker LLC ("Guthy-Renker") and WEN by Chaz Dean, Inc. ("WEN") (collectively Guthy-Renker and WEN shall be referred to herein as "Defendants"), Defendants have agreed to not object to an award of attorney fees and costs of $6.5 million. (Settlement Agreement at § 9).  Defendants have also agreed to pay Named Plaintiff Incentive Awards to the four Named Plaintiffs.  (Settlement Agreement at § 8).

For the following reasons, the Attorney's Fees Award to Class Counsel and the Incentive Awards to the Named Plaintiffs should be finally approved by this Court as fair and reasonable.

## II.     PERTINENT PROCEDURAL HISTORY

### A. Litigation History

This Lawsuit was initiated against Guthy-Renker on July 31, 2014. Plaintiffs asserted the following claims:  1) Breach of Warranty; 2) Violation of California Unfair Competition Law (Business & Professions Code § 17200 *et seq.*); 3) Violation of California False Advertising Law (Business & Professions Code § 17500 *et seq.*); 4) Violation of the Florida Unfair and Deceptive Trade Practices Act; 5) Common Counts/Assumpsit; 6) Negligence—Failure to Warn; 7)

---

[1] Although Defendants have agreed not to object to the award of attorneys' fees sought, this memorandum reflects only the views of the Named Plaintiffs and Class Counsel.

[2] Unless otherwise noted capitalized terms shall have the same meaning ascribed to them in the Settlement Agreement and Release of Claims.  Doc. 170-1.

Negligence—Failure to Test, and; 8) Strict Products Liability.   That initial complaint was amended on November 3, 2014. Doc. 34.

Following the filing of an amended complaint, a motion to dismiss and compel arbitration was filed on December 10, 2014.  Doc. 36.  On February 27, 2015, this Court granted in part and denied in part the motion to dismiss and compel arbitration.  Doc. 41.

Shortly thereafter, an intensive period of discovery began.  Depositions were conducted of Plaintiffs Friedman and Miller in Florida and Maryland, respectively. Additionally, Class Counsel conducted depositions of Guthy-Renker employees on a range of topics in North Carolina and California.  Plaintiffs served more than 75 formal requests for production of documents, over 100 requests for admission and 18 interrogatories.

On June 19, 2015, in midst of the discovery process, Plaintiffs filed a Second Amended Complaint naming WEN by Chaz Dean, Inc. as a Defendant. Doc. 69.  Following the filing of WEN by Chaz Dean, Inc.'s Answer to the Second Amended Complaint, Plaintiffs served discovery on WEN by Chaz Dean, Inc., as well.

Two motions to compel were litigated arising out of Plaintiffs' discovery requests and Guthy-Renker's objections.  First, on May 28, 2015, Class Counsel filed a motion to compel to get further responses to Guthy-Renker's responses to interrogatories and requests for admission relating to the WEN Cleansing Conditioner, and whether the ingredient PEG 60 was common to all Guthy-Renker scents.  Doc. 62-1.  That motion was granted on June 26, 2015 and resulted in an order requiring Guthy-Renker to provide supplemental responses within 21 days of the date of the order.  Doc. 75.  Second, Class Counsel filed a motion to compel on July 28, 2015, seeking documents evidencing studies conducted by Guthy-Renker on the safety of WEN Cleansing Conditioner which, it claimed, were not discoverable under the work product doctrine.  Doc. 81-1.  That motion was fully

1    briefed and argued.   That second motion to compel was granted in part by

2    Magistrate Judge Rosenberg on August 24, 2015.   Doc. 116.   The case was then

3    stayed by the Court, on its own motion, on September 24, 2015.

4          In total, the parties exchanged more than well over 10,000 pages of

5    documents.   Critically, Class Counsel uncovered that fact that Defendants has

6    received more than 15,000 complaints from consumers about hair loss and/or scalp

7    irritation after using WEN products.   Because the FDA does not have jurisdiction

8    over cosmetics, these complaints were almost entirely hidden from public view

9    until this suit brought them to light.

10         At or near the same time, the press became interested in this lawsuit.

11   Although Class Counsel refused to be interviewed related to the lawsuit, through

12   counsel, Plaintiffs Friedman, Miller and Henry-MacArthur were asked to

13   participate in interviews with the national news media, including The Today Show.

14   *See*   *e.g.*   www.today.com/style/wen-chaz-dean-sued-hair-loss-adverse-effects-

15   t61856.   Numerous press outlets contacted the Named Plaintiffs and Class Counsel

16   for comment.   Ultimately, extensive press coverage created pressure on Defendants

17   to resolve this matter on a class action basis.

18        **B. Settlement History**

19         On September 24, 2015, this Court issued a stay of the litigation in order to

20   facilitate negotiation of a potential settlement.   In preparation for mediation, Class

21   Counsel obtained preliminary expert reports from a world-renowned dermatologist

22   regarding the physical reactions to WEN products, and from a marketing and

23   survey expert regarding the advertising claims advanced.   Detailed mediation

24   statements were provided by both sides prior to mediation.

25         Thereafter, the Parties attended their first day of mediation on January 29,

26   2016 before JAMS mediator the Hon. Peter D. Lichtman (Ret.).   While some

27   progress was made, the complexity of the issues, the number of parties involved,

28   and the various insurers involved made the obstacles to settlement appear likely

insurmountable.  Nevertheless, the parties all traveled to Los Angeles for three more full day mediation sessions on February 29, 2016, March 1, 2016; and March 31, 2016.  Between mediation sessions, the parties prepared additional statements and disclosures as needed to advance their positions.  At the conclusion of the March 31, 2016 mediation, Judge Lichtman made a mediator's proposal that all Parties ultimately accepted on April 29, 2016.

Thereafter, Class Counsel and defense counsel held a two-day in-person meeting in Los Angeles on May 9-10, 2016 to work out the details of the Settlement.  Additional confirmatory discovery was issued and responded to and several weeks of drafting was required to reduce the Settlement Agreement to writing.

On June 28, 2016, Class Counsel submitted an unopposed motion for preliminary approval of the Settlement.  Doc. 153.  After the preliminary approval hearing, changes and modifications were made to the claim form that provided more information about the amount Settlement Class Members could anticipate recovering as instructed by this Court.  This Court granted preliminary approval to the Settlement on October 28, 2016.  Preliminary Approval Order at 22 (Doc. 178).  The Order also appointed Plaintiffs to act as class representatives, and appointed Class Counsel to act on behalf of the Settlement Class.  *Id.*  The Order also approved the Notice Plan established by the parties.  *Id.*

Before Notice could be issued to those Settlement Class Members that purchased WEN products through Amazon, Class Counsel had to serve a subpoena on the internet retailer Amazon, in order to obtain the list of persons who purchased WEN Hair Care Products through Amazon during the applicable class period.  Amazon moved to quash this subpoena, and Class Counsel had to file papers opposing Amazon's Motion to Quash in the United Stated District Court for the Western District of Washington. After a successful oral argument against the motion to quash, Amazon produced a list of customers who were also provided

notice under the Settlement.  Ultimately, direct notice was issued to approximately 9 million class members (See Declaration of Jeff Dahl).  As Class Counsel with their firms listed in the Notice, the three firms representing the class fielded in excess of 1,000 phone calls and emails from class members through the date of this filing.  The task of responding to these class members and answering questions regarding the Settlement involved hundreds of hours of time and effort by Class Counsel and their staffs.

As the claims were coming in, Class Counsel also met on a near weekly basis with the Settlement Administrator, Dahl Administration, and the Special Master, Judge Nan Nolan (Ret.).  Issues ranging from confidentiality agreements to cure letters were discussed at length between the parties and the Administrator, and all parties monitored the claims being filed on a weekly basis.

In response to the relatively few objections filed in this matter, Class Counsel subpoenaed and deposed four objectors in Pittsburg, Cincinnati, Chicago, and Los Angeles.  Those objections are addressed in Plaintiff's Memorandum of Law in Support of Final Approval.

Pursuant to the Settlement Agreement, Defendants do not oppose Class Counsel's Application for Attorney Fees and Costs equal to $6.5 Million, or just under 25% of the common fund.  The Settlement Agreement also provides that Class Counsel will submit applications for, and Defendants will not oppose, incentive awards for Plaintiffs Friedman and Miller of $25,000 each, an incentive award for Plaintiff Henry-McArthur of $5,000, and an incentive award for Plaintiff Rogers of $2,500.

### III. THE COURT SHOULD GRANT CLASS COUNSEL'S REQUEST FOR A BENCHMARK AWARD OF APPROXIMATELY 25% OF THE COMMON FUND FOR ATTORNEYS' FEES AND COSTS

Class Counsel's entitlement to an award of attorney's fees and costs is not disputed and is governed by Section 9 of the Parties' Settlement Agreement and

Release of Claims which provides in relevant part:

> In light of the substantial work, considerable expenses expended, and risks associated with prosecuting this Lawsuit on behalf of the Class, Defendants agree not to oppose an application by Class Counsel for up to $6,500,000 to cover all costs and fees incurred in prosecuting this action on behalf of the Class. This request equates to slightly less than 25% of the Fund. Subject to Court Approval, payment of the Court-awarded Attorney's Fees and Costs shall be paid within five (5) days of the Effective Date. Payments shall be made out of the Fund, by check, payable to Varnell & Warwick, P.A. Trust Account, for distribution to all Class Counsel. Defendants shall have no liability to any Class Counsel or other person claiming entitlement to any portion of the Court-awarded Fees and Costs, and Class Counsel shall defend and indemnify Defendants against any claims, demands, liens, actions or proceedings arising out of or relating to any dispute over the distribution of the Attorney's Fees and Costs.

It is well recognized that, when class counsel recover a common fund conferring a "'substantial benefit' upon a class of beneficiaries, they are entitled to recover their attorney's fees from the fund." *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003) (*Staton*) (citing *Lewis v. Anderson*, 692 F.2d 1267, 1270 (9th Cir. 1982)).  Counsel "who creates a common fund is allowed an *extra* reward" -- beyond any arrangement with clients -- in order to share the wealth conferred upon the beneficiaries.  *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989) (*PJAH*) (emphasis in original).  Even a substantial nonmonetary benefit for a class of beneficiaries qualifies counsel for an award of attorney's fees. *Southeast Legal Defense Group v. Adams*, 657 F.2d 1118, 1122 (9th Cir. 1981).

In the Ninth Circuit, "[i]n a common fund case, the district court has discretion to apply either the lodestar method or the percentage-of-the-fund method in calculating a fee award."  *Fischel v. Equitable Life Assurance Soc'y of the U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *see also, e.g., Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989); *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1295 (9th Cir. 1994)).  While the court

has discretion to use either method, "the primary basis of the fee award remains the percentage method." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002). *See also Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("benchmark percentage [of 25% of the fund] should be adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors"). Importantly, "the lodestar cross-check does not trump the primary reliance on the percentage of common fund method." *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 307 (3rd Cir. 2005)

The Ninth Circuit has "established 25% of the common fund as the 'benchmark' award for attorney fees." *E.g., Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1116 (C.D. Cal. 2008); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also Six Mexican Workers v. Arizona Citrus Growers, supra*. Although not mandated by the Ninth Circuit, courts often consider the following factors when determining the benchmark percentage to be applied: (1) the result obtained for the class; (2) the effort expended by counsel; (3) counsel's experience; (4) counsel's skill; (5) the complexity of the issues; (6) the risks of non-payment assumed by counsel; (7) the reaction of the class; and (8) comparison with counsel's loadstar. *See, e.g., In re Heritage Bond Litigation*, 2005 WL 1594403, *18 (C.D. Cal. 2005) (exercising discretion to award 1/3 of the class fund as a fee). Class Counsel address these factors below.

### A.   Results Obtained For The Class

As discussed more fully in Plaintiff's Final Fairness Brief, this settlement has three components: (1) specific requirements to provide warnings about adverse effects; (2) a flat fee recovery for misrepresentation claims; and (3) settlement payments commensurate with the damages suffered.

To cover these payments, a $26.25 million non-reversionary Settlement

1    Fund has been created.  The Settlement in this case is outstanding and far-reaching,

2    especially given the risks Plaintiffs faced in proving their claims.  The benefits of

3    this Settlement, which are comprehensive, will cover up to 9 million class

4    members, which is almost 3% of the entire US population of 318.9 million people.

5    The Settlement will provide for cash payments of up to $20,000, which is an

6    almost unheard of amount in a household products liability case.  Importantly,

7    Settlement Class Members will not be required to prove causation for their injuries,

8    which in many cases are itchy scalp and temporary hair loss.

9          The Settlement provides far-reaching future benefits as well, in the form of

10   significant injunctive measures requiring Defendants to provide warnings of

11   adverse effects.  This Settlement is unquestionably a win for US consumers.  In

12   addition to monetary benefits, when awarding attorneys' fees, "[a] court should

13   take into account any non-monetary benefits obtained for class, such as injunctive

14   or declaratory relief."   5-23 MOORE'S FEDERAL PRACTICE – CIVIL §

15   23.124(b)(i).   "[I]t is important to recognize that in some class actions the

16   monetary relief obtained is not the sole determinant of an appropriate attorney fees

17   award."  Advisory Committee Notes to Fed. R. Civ. P. 23(h) (2003 Amendments)

18   (citation omitted).  "Incidental or nonmonetary benefits conferred by the litigation

19   are a relevant circumstance" in determining fee awards.  *Vizcaino*, 290 F.3d at

20   1049; *Staton*, 327 F.3d at 974; *see also Steiner v. Williams*, 2001 WL 604035, at

21   *4 (S.D.N.Y. May 31, 2001) ("[C]ounsel may recover a fee if the settlement

22   conferred a substantial non-monetary benefit").

23         **B.    The Efforts Expended By Counsel**

24         As set out above, the efforts expended by Class Counsel to obtain this

25   excellent settlement were substantial and involved considerable risk.  Among other

26   necessary tasks, Class Counsel performed an extensive investigation and

27   evaluation of the case to establish its merits; researched and drafted amended

28   complaints; prepared and executed extensive written discovery, both offensively

8

and defensively, reviewing thousands of pages of documents; litigated multiple motions to compel; served subpoenas on third parties; retained and worked with experts; defended the various complaints against attack through motions to dismiss and to compel arbitration, including the performance of legal research, drafting opposition briefs, requests for judicial notice, and proposed orders; prepared for and participated in multiple formal rounds of mediation over a three-month period (a total of four in-person sessions, as well as numerous telephone conferences), and engaged in follow-up work after each mediation session; negotiated the specific, detailed terms of the Settlement once an agreement in principle was reached; litigated the notice and claims process as hard as they litigated the case—including the adjudication of Amazon's right to withhold customer data; and prepared for the motion for preliminary settlement approval.

Not only that, but Defendants aggressively litigated this case throughout. They denied all legal liability or the existence of any defects in their products or any safety hazard; filed extensive motions to dismiss and to send the case to arbitration; served voluminous document requests and interrogatories on Named Plaintiffs Friedman and Miller and took their depositions; negotiated hard over discovery disputes; signaled their intention to oppose certification of any class; indicated that they would file summary judgment and *Daubert* motions, any appeals they deemed appropriate and that they would take the case to trial if necessary.  Defendants were hard negotiators at all four days of mediation, and left the table twice (in January 2016 and again at the beginning of March 2016) when the parties were at an impasse.

In addition to the comprehensive litigation and settlement efforts detailed above, Class Counsel have also already spent significant time further advocating for and protecting the Class in connection with notice and administration issues, and expect to spend a significant amount of time through the Effective Date, including additional time spent on notice and administration issues, responding to

inquiries from class members, ensuring strict compliance with the Settlement provisions by Defendants, preparing the final settlement approval brief, participating in the final approval hearing, responding to objections and defending against possible appeals, as well as seeking a bond should any appeal be filed.

### C. Counsel's Experience And Skill

The extensive Declarations of Class Counsel unequivocally establish that all these attorneys have considerable experience and skill, experience and skill that they brought to bear for the benefit of the Class here.  This outcome was made possible by Class Counsel's extensive experience in litigating class actions of similar size, scope, and complexity to the instant action.  Class Counsel regularly engage in complex litigation involving consumer issues, all have been class counsel in numerous consumer class action cases.  Mr. Warwick and Ms. Varnell of Varnell & Warwick, P.A. are nationally recognized for their work in consumer class actions.  Varnell & Warwick has served as class counsel in class action cases throughout the country that have recovered tens of millions of dollars for consumers.

Mr. Anderson and the law firm of Cuneo, Gilbert & LaDuca, LLP are highly experienced litigators focused on the prosecution of class actions for consumers.  Mr. Anderson and the team at Cuneo Gilbert & LaDuca, have worked to recover billions of dollars for consumers in the 29-year history of the firm and continue to aggressively advocate for their clients, occupying lead and class counsel roles in numerous cases.

Finally, Mr. Neville Johnson, Mr. Doug Johnson, and Ms. Jordanna G. Thigpen of Johnson & Johnson are some of California's most experienced class action attorneys.  Johnson & Johnson LLP has represented consumers in class actions in the area of privacy, credit cards and products liability, and numerous entertainment industry-related class action involving unpaid royalties, profit participation, and other monies improperly held by corporations and other

organizations.   A profile of the firm's attorneys and summary of the numerous complex litigation matters in which they have obtained successful results is set forth in the firm resume attached to the Declaration of Neville L. Johnson.     All Class Counsel are dedicated consumer advocates who have been appointed class counsel in other important consumer matters as well.

### D.    Complexity Of The Issues

While most class actions are complex, Class Counsel had to overcome major obstacles in prosecuting this case.   There were difficult legal issues to address, such as the fight over arbitration.   There were multiple WEN products to evaluate, for purposes of typicality and to determine the size of the class.   As Class Counsel will show more fully in their Motion for Final Approval, this was not an easy case. This factor mitigates in favor of awarding the benchmark 25% fee requested.

### E.    The Risk Of Non-Payment Assumed by Counsel Was Substantial

Class Counsel prosecuted this case on a pure contingent-fee basis, advancing all expenses on the understanding that they would receive a fee only if the case was successful. Class Counsel's outlay of time and resources in this case has been significant.   In all, Class Counsel and their staffs have spent over 5,100 hours investigating, analyzing, researching, litigating, and negotiating a favorable resolution of this case, and as discussed below, have incurred over $70,000 in necessary litigation expenses.   Class Counsel expended these resources for the benefit of the Class despite the genuine risk that they would never be compensated at all.   The Ninth Circuit has repeatedly held that taking a case on a contingent basis can readily support the reasonableness of the fee percentage requested here. *See Chemical Bank v. City of Seattle (In re Washington Pub. Power Supply Sys. Sec. Litig.)*, 19 F.3d 1291, 1299-1300 (9th Cir. 1994) ("Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis

1    regardless whether they win or lose.")

2    **F. The Reaction Of The Class**

3        Finally, the reaction of the Class indicates that the requested percentage fee
4    is reasonable.   The Ninth Circuit has long recognized that the number of class
5    members who object to a proposed settlement is a factor to be considered in
6    determining whether final approval is appropriate.   *Mandujano v. Basic Vegetable*
7    *Prods. Inc.*, 541 F.2d 832, 837 (9th Cir. 1976).   As Class Counsel explains fully in
8    Plaintiffs' Memorandum in Support of Final Approval, only a handful of Class
9    members have filed objections, and far fewer have challenged the requested
10   attorney's fee.   This speaks volumes about the reasonableness of the attorney fee
11   requested.

12       **G. Class Counsel's Request For $6.5 Million in Attorneys' Fees and**
13       **Costs Represents Less Than 25% of the Common Fund Benefit To The**
14       **Class, And Is Commensurate With The Ninth Circuit Benchmark**

15       The Ninth Circuit has applied a percentage of the recovery method in
16   determining the appropriate and reasonable attorneys' fee award in class actions
17   where a monetary fund is created for payments by defendants to benefit class
18   members.   *PJAH, supra*, 886 F.2d at 272.   In considering a common fund award of
19   attorneys' fees, the Ninth Circuit has held, "[t]wenty-five percent is the
20   'benchmark' that district courts should award in common fund cases."   *In re*
21   *Pacific Enterprises Securities Litigation*, 47 F.3d 373, 379 (9th Cir. 1995) (*Pacific*
22   *Enterprises*) (citing *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d
23   1301, 1311 (9th Cir. 1990).   If special circumstances warrant, the district court may
24   adjust the benchmark up or down.   *Id.*   For example, an award of 33% may be
25   appropriate when a court considers the complexity of the issues, risk and the
26   nonmonetary benefits obtained for the class.   *Id.*   Indeed, in many cases involving
27   common funds of less than $10 million, the percentage awarded can range from
28   30% to 50%.   *See Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 297-98

1   (N.D. Cal. 1995).  One Northern California district court noted that that fee awards

2   in common fund cases "almost always hover[] around 30% of the fund created by

3   the settlement" and concluded that, absent extraordinary circumstances, it will

4   award 30% as attorneys' fees in common fund cases.  *In re Activision Securities*

5   *Litigation*, 723 F.Supp. 1373, 1378-79 (N.D. Cal. 1989).  "This will encourage

6   plaintiffs' attorneys to move for early settlement, provide predictability for the

7   attorneys and the class members, and reduce the time consumed by counsel and

8   court in dealing with voluminous fee petitions."  *Id.*  The overwhelming trend

9   favors the percentage method in common fund cases.  *In re Omnivision*

10  *Technologies, Inc.*, 559 F.Supp.2d 1036, 1047-48 (N.D. Cal. 2008).

11      Here, Class Counsel's request for an Award of $6.5 million, including

12  $72,793.43, in unreimbursed costs, represents 24.8% of the $26.25 million

13  common fund.   This is commensurate with the Ninth Circuit's established

14  benchmark and should be approved on this basis, particularly in light of the

15  substantial risk that Class Counsel took in advocating for the Settlement Class.

16  **IV.    ALTERNATIVELY, THE FEES REQUESTED ARE REASONABLE**

17  **UNDER THE LODESTAR/MULTIPLIER APPROACH**

18      In this case, the existence of a substantial common fund strongly augers in

19  favor of utilizing the percentage-of-the-recovery method of calculating the

20  attorneys' fees, with 25% established as the "benchmark" in the Ninth Circuit.  *See*

21  *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011).  A

22  departure from that benchmark requires a showing of "special circumstances."  *Id.*

23  Such special circumstances do not exist here.

24      The Ninth Circuit has recognized that, where appropriate, courts are

25  encouraged "to guard against an unreasonable result by cross-checking their

26  calculations against a second method."  *In re Bluetooth*, 654 F.3d at 944 (citing

27  *Vizcaino*., 290 F.3d at 1050-1051, and *In re Gen. Motors Corp. Pick-Up Truck*

28  *Fuel Tank Prods. Liability Litig.*, 55 F.3d 768, 820 (3d Cir. 1995)).  Application of

the "lodestar method" provides a useful "cross-check" as to the reasonableness of a given percentage award. *Vizcaino*, 290 F.3d at 1050. Courts commonly use a "rough calculation" of the lodestar as a cross-check. *Aboudi v. T-Mobile USA, Inc.*, 2015 WL 4923602, at *7 (S.D. Cal. Aug. 18, 2015); *Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1122 (C.D.Cal., 2008) (though not required, a court may consider the lodestar in evaluating a percentage award request); *see Fischel v. Equitable Life Assur. Society of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002). Importantly, the lodestar cross-check requires "neither mathematical precision nor bean-counting." *In re Rite Aid Corp. Securities Litigation*, 396 F.3d 294, 306 (3d Cir. 2005).

Class Counsel's combined declarations show that they have devoted a total of 5,126.25 hours to the instant case on a purely contingent basis. Warwick Decl. at ¶ 19; Anderson Decl. at ¶ 16; Johnson Decl. at ¶ 18.

Thus, the combined lodestar equates to $3,157,133 in fees. Final Approval Decl. at ¶ 25. The lodestar amounts are based on Class Counsels' time records documenting the time they spent on this case. *Id.* In addition, Class Counsel has incurred unreimbursed costs of $72,793.43 in prosecuting this case. *Id.*

This lodestar cross-check will result in a lodestar multiplier of a little less than 2.04, after the deduction of expenses, which Class Counsel hereby requests. Lodestar multipliers of 1x to 4x are routinely approved in this judicial district, and the requested multiplier is in line with other attorneys' fee awards in this district. Moreover, to the extent the Court completes a lodestar crosscheck, under the well-established *Kerr* factors, a lodestar multiplier of just below 2.04 is fully justified under the facts and circumstances of this case.

### A. The Hours Expended Are Reasonable

Plaintiffs' counsel are entitled to be compensated for "all hours reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 431, 103 S. Ct. 1933 (1983). Class Counsel spent more than 5,100 attorney and staff hours investigating,

prosecuting and successfully resolving this action.  Class Counsels' time records establish prima facie entitlement to compensation for the time recorded.  *See Gates v. Rowland*, 39 F.3d 1439, 1449 (9th Cir. 1994).  Each firm has submitted a detailed declaration attesting that their reported hours were accurate and reasonably incurred in connection with the prosecution and settlement of this case. All of the work for which Class Counsel seek payment is compensable.  *Blackwell v. Foley*, 724 F. Supp. 2d 1068, 1081 (N.D. Cal. 2010) ("An attorney's sworn testimony that, in fact, it took the time claimed '. . . is evidence of considerable weight on the issue of the time required . . .'") (citation omitted; alterations in original).

| Firm | Pre-Suit Investigation and Complaint | Discovery | Motion Practice | Settlement | Final Approval and claims admin | Totals[3] |
|------|------|------|------|------|------|------|
| V&W | 87.20 | 217.70 | 468.30 | 872.50 | 466.60 | 2112.30 |
| CGL | 112.75 | 74.00 | 638.75 | 1034.35 | 424.00 | 2,283.85 |
| J & J | 0 | 11.10 | 313.30 | 249.00 | 166.70 | 740.10 |
| Totals | 199.95 | 302.80 | 1,420.35 | 2,155.85 | 1,047.30 | 5,126.25 |

As demonstrated by their declarations, Class Counsel staffed and managed the case so as to avoid duplication of efforts.  For example, Plaintiffs provided only one attorney to attend and take most of the depositions in this matter.  It was only on rare occasions and for the most important witnesses that multiple attorneys acting as Class Counsel attended the depositions.  Given the complexity and novelty of the issues, Defendants' vigorous defense, and the exceptional results obtained, the hours Plaintiffs' counsel expended to investigate, litigate and resolve this case are entirely reasonable and should be compensated in full.

---

[3] These totals represent the total hours spent by each firm as detailed in the separate declarations of Warwick, Anderson and Johnson.

**B. Class Counsels' Hourly Rates Are Reasonable In This Market**

Hourly rates "are to be calculated according to the prevailing market rates in the relevant community." *Camacho v. Bridgeport Financial, Inc.*, 523 F.3d 973, 979 (9th Cir. 2008)*; see also Serrano v. Unruh*, 32 Cal.3d 621, 640-44 (1982). The lodestar calculation reflects hourly billing rates between $650 and $900 for Class Counsel.  Warwick Decl. at ¶ 19; Anderson Decl. at ¶ 16; Johnson Decl. at ¶ 18.

These billing rates are reasonable when compared to rates charged by other attorneys of comparable experience and skill handling similar kinds of cases in the Los Angeles Area.  *In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 464 (C.D. Cal. 2014). Moreover, the Laffey Matrix provides for hourly rates for Class Counsel between $685 and $826. (www.laffeymatrix.com/see.html).

In *In re Toys R Us*, this Court in 2014 collected relevant cases on the hourly billing rates in the Los Angeles area:

 Based on its general knowledge of rates in the Los Angeles legal community for attorneys of comparable skill and experience, the court concludes that the hourly rates requested for partners, associates, and paralegals are reasonable. *See Kearney*, 2013 WL 3287996, *8 (approving hourly rates between $650 and $800 for class counsel in a consumer class action); *Parkinson v. Hyundai Motor America*, 796 F.Supp.2d 1160, 1172 (C.D. Cal. 2010) (approving hourly rates between $445 and $675 for class counsel in consumer class action); *see also POM Wonderful, LLC v. Purely Juice, Inc.*, No. CV 07–2633, 2008 WL 4351842, *4 (C.D. Cal. Sept. 22, 2008) (finding rates of $475 to $750 for partners and $275 to $425 for associates reasonable in consumer class action); *see also Craft v. County of San Bernardino*, 624 F.Supp.2d 1113, 1122 (C.D. Cal.2008) (finding a $225 rate reasonable for paralegals); *Vasquez v. Rackauckas*, 2011 WL 3320482, at *2 (finding $210 and $200 rates reasonable for paralegals); *Bernal v. Paradigm Talent & Literary Agency*, 1:09–CV–00463–OWW–SKO, 2010 WL 6397561, *5, *7 (C.D. Cal. June 1, 2010) (finding a paralegal rate of $225 reasonable); *L.A. Printex*

*Indus., Inc. v. William Carter Co.*, No. CV 09–2449–JFW (FMOx), 2010 WL 4916634 *2–3 (C.D. Cal. Dec. 1, 2010) (using paralegal rates of $229.50 and $202.50 to calculate fees).

*In re Toys R Us*, 295 F.R.D. at 464.

Furthermore, the National Law Journal published 2014 hourly rates for the Los Angeles area rates as follows:

| Firm | Partner Rates | Associate Rates |
|---|---|---|
| Irell & Manella | $800- $975 | $395- $750 |
| Manatt Phelps | $640 - $795 | n/a |
| O'Melveny & Meyers | $615 -$950 | n/a |
| Jeffer Mangels | $560- $875 | n/a |
| Sheppard Mullin | $490 - $875 | $275 - $535 |

*Billing Rates Across the Country*, NAT'L LAW J. (Jan. 13, 2014), available at http://www.nationallawjournal.com/id=1202636785489/Billing-RatesAcross-the-Country?slreturn=20170324160350.  Notably, many of the foregoing rates reflect fees for non-contingency matters in which the firms take on no risk of non-payment.

Finally, a recent decision by this Court indicates that such rates are consistent with the rates charged by class counsel in similar product liability class actions.  In *Chambers v. Whirlpool Corp.*, 2016 WL 5922456 at *14 (C.D. Cal. Oct. 11, 2016), Judge Olguin presided over a product liability class action settlement that provided relief to class members for overheating dishwashers.  As of October 2016, the Court found the prevailing hourly rates in Los Angeles for such cases to be consistent with the rates charged by Class Counsel as follows:

> In Los Angeles, hourly rates between $485 and $750 are common. *See, e.g.*, *Counts v. Meriwether*, 2016 WL 1165888, *3–4 (C.D. Cal. 2016) (finding hourly rates of $701.25, $552.50, and $446.25 per hour "reasonable and

> consistent with the prevailing rates in the Central District"); *Rodriguez v. Cty. of L.A.*, 96 F.Supp.3d 1012, 1023 (C.D. Cal. 2014) (approving rates from $500 to $975); (see also Dkt. 218–1, Fees Brief at 19) (quoting a National Law Journal survey of regional billing rates published in 2014, showing standard partner rates among top Los Angeles firms ranging from $490 to $975). Thus, the court finds that the challenged rates are reasonable and consistent with those charged by comparable attorneys in the Central District.

*Id.* at *14. The Court even expressed concern that the Laffey Matrix may be too low for rates on the west coast. *Id.*

Accordingly, the rates of Class Counsel who prosecuted this case, all of whom are partners in their respective firms, range from $650-$850. Those rates are below the rates approved in this District and rates charged on a non-contingent basis by many leading Los Angeles firms as indicated in the NLJ survey. Accordingly, Class Counsel's rates are within the market billing rates within this judicial district and should be approved.

**C. Enhancement Of The Lodestar Is Appropriate, Necessary and Justified By The Facts And Circumstances Of This Case**

Under both federal and state law, the basic lodestar amount may be adjusted upward in cases—such as this one—where the facts and circumstances make such an adjustment necessary to ensure a reasonable fee award. *See Wing v. Asarco,* Inc., 114 F.3d 986, 989 (9th Cir. 1997). After computing the lodestar, "[t]he resulting figure may be adjusted upward or downward to account for several factors [.]" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *see Stetson v. Grissom*, 821 F.3d 1157, 1166 (9th Cir. 2016) ("The district court also has discretion to adjust the lodestar upward or downward using a multiplier that reflects a host of reasonableness factors[.]") (internal quotation marks omitted).

The factors that the court should consider when adjusting the lodestar, known as the *Kerr* factors, include: (1) the time and labor required; (2) the novelty

and difficulty of the questions involved; (3) the skills necessary to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *See Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), abrogated on other grounds by *City of Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

In the Ninth Circuit, multipliers "ranging from one to four are frequently awarded ... when the lodestar method is applied." *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1051 n. 6 (9th Cir.), cert. denied, 537 U.S. 1018, 123 S.Ct. 536, 154 L.Ed.2d 425 (2002) (approving multiplier of 3.65); see *Parkinson v. Hyundai Motor Am.*, 796 F.Supp.2d 1160, 1170 (C.D. Cal. 2010) ("Where appropriate, multipliers may range from 1.2 to 4 or even higher."); *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 298–99 (N.D. Cal. 1995) (holding that a multiplier of 3.6 was "well within the acceptable range for fee awards in complicated class action litigation" and that "[m]ultipliers in the 3–4 range are common").

Here, nearly all of the *Kerr* factors support the requested multiplier of a little under 2.04. Litigating this case required an extraordinary amount of time and labor. Not only is this matter a class action, it is a products liability class action, which requires substantial expert participation. To make matters even more difficult, this case also includes components of personal injury, which make it arguably the most difficult type of class action to litigate successfully. The costs associated with medical experts on damages combined with the experts necessary to prove causation and product defect were significant and had the case not settled, could have easily exceeded $500,000.

1    Even if Plaintiffs were able to overcome these risks and prevailed at the

2    class certification stage and at trial, the likely result could be a judgment as to

3    liability only regarding the defective nature of the WEN products. *See e.g., In re*

4    *Sears, Roebuck &Co. Front–loading Washer Prods. Liab. Litig.*, 2016 WL772785,

5    at *2 (N.D. Ill. 2016) (Class certified only for liability proceedings and not

6    damages). Thereafter, Class Counsel would have had to oversee scores of hearings

7    or mini-trials on damages. Such hearings would have caused the expenses and the

8    time to skyrocket, as well as the risk. At the time the litigation was filed, however,

9    these risks were substantial and made the case significantly more risky than other

10   class actions. Class Counsel well understood these risks and chose to advocate for

11   the Class anyway. These litigation risks, combined with the fact that defendants

12   are "large corporation[s] with substantial resources, financial and otherwise," *City*

13   *of Omaha Police & Fire Ret. Sys. v. LHC Grp.*, 2015 WL 965696, *8 (W.D. La.

14   2015), made the case particularly "undesirable."

15   After Plaintiffs overcame arbitration and an extensive motion to dismiss,

16   Class Counsel negotiated to allow those Settlement Class Members subject to

17   individual arbitration back into the Settlement. This is a significant benefit to

18   those class members that purchased WEN products via the Internet since February

19   26, 2014, as since that time the Guthy-Renker website included an arbitration

20   clause that this Court found enforceable. The cost of filing individual arbitrations,

21   the lack of discovery, and the difficulty of obtaining counsel would have precluded

22   many Settlement Class Members from receiving any compensation if they were

23   required to arbitrate. This is especially true for those Settlement Class Members

24   with only modest damages.

25   Most importantly, the results obtained by class counsel are substantial, given

26   the risks involved, as set forth in Plaintiff's Memorandum in Support of Final

27   Approval. Cash payments of up to $20,000, that take into account the harm

28   suffered by each Settlement Class Member, are virtually unheard of in product

liability class actions.  Absent this Settlement, the time and expense necessary to prove causation for each person individually and the expert costs associated with doing so would effectively make all but the most egregious cases cost prohibitive.

Finally, this Court must also consider that Class Counsel advanced this high-risk case under a full contingency arrangement.  "One extremely important factor ... is the contingent nature of success; for every successful ... action brought, several more may be lost, and in these no fee will be received." *White v. City of Richmond,* 559 F. Supp. 127, 133 (N.D. Cal. 1982).  "When [such an] action is successful, therefore, the attorneys must be rewarded, not only for the hours reasonably expended in prosecuting the action, but also for the risk that no fee would ever be forthcoming." *Id.*  "The unadorned lodestar reflects the general local hourly rate for a fee-bearing case; it does not include any compensation for contingent risk." *Ketchum v. Moses*, 24 Cal.4th 1122, 1133, 1138 (2001).

Accordingly, to the extent that the Court deems fee cross-check necessary, the *Kerr* factors support the benchmark common fund percentage requested by Class Counsel.

## V.  INCENTIVE AWARDS TO CLASS REPRESENTATIVES SHOULD BE FINALLY APPROVED

The Settlement Agreement also provides that Class Counsel will submit applications for, and Defendants will not oppose, incentive awards for Plaintiffs Friedman and Miller of $25,000 each, an incentive award for Plaintiff Henry-McArthur of $5,000 and Plaintiff Rogers of $2,500.  As Class Counsel will show, the proposed Incentive Awards are reasonable, and should be approved by this Court.

The Ninth Circuit recognizes that "named plaintiffs, as opposed to designated members who are not named plaintiffs, are eligible for reasonable incentive payments." *Staton*, 327 F.3d at 977; *Rodriguez v. W. Pub'g Corp.,* 563 F.3d 948, 958 (9th Cir. 2009) (service awards "are fairly typical in class action

cases"). Such awards are "intended to compensate class representatives for work done on behalf of the class [and] make up for financial or reputational risk undertaken in bringing the action." *Id.* Relevant considerations include: (1) the actions the class representatives took to protect the interests of the class; (2) the degree to which the class benefited from those actions; and (3) the amount of time and effort the class representatives expended in pursuing the litigation. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

Courts recognize that a class representative is entitled to compensation for the expense he or she incurred on behalf of the class lest individuals find insufficient inducement to lend their names and services to the class action. *In re Oracle Sec. Litig.*, No. 90-0931, 1994 U.S. Dist. LEXIS 21593, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) (citing *In re Continental Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992)). Such payments are routinely approved when, as here, they are reasonable in light of applicable circumstances, and not unfair to other class members. *Smith v. Tower Loan of Miss., Inc.*, 216 F.R.D. 338, 368 (S.D. Miss. 2003). To assess whether an incentive award is appropriate, the Court must balance the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment. *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003).

Here, the Named Plaintiffs provided meaningful representation to the class by participating in all (or some) of the following litigation-related activities: reviewing court filings, answering interrogatories, responding to document requests, preparing for depositions with their attorneys, and sitting for depositions. Final Approval Decl. ¶ 19; see also Declarations of Amy Friedman and Judi Miller.

The relatively high incentive awards provided to Plaintiffs Friedman and Miller must be addressed separately, as they may—out of context—appear higher than normal and higher than the awards negotiated for the other class representatives. There are two components to the increased incentive awards for

Ms. Friedman and Mrs. Miller.  First, as the two class representatives that survived arbitration, they were the only Plaintiffs subjected to vigorous discovery inquiries by Defendants.  Unlike most class actions, their complete medical and mental health histories were combed through in great detail.  Not only were their physical conditions and family histories exposed by Defendants, but details regarding their mental state and any issues that could have caused stress related to hair loss were fully investigated.  Defendants delved into very personal issues such as family and romantic relationships in this regard.   As class representatives, some of this information was in the public domain as opposed to individual cases where such information could be kept confidential.

Second and most importantly, these two women accepted the role of acting as the public face of a suit for hair loss: a claim which necessarily carries with it the embarrassment and stigma that comes along with such claims.  In other words, these two individuals had to stand up and say "look at me", "my hair looks terrible, and I look so bad that I have filed suit against WEN."  While thousands of absent class members have filed claims explaining that they felt too embarrassed to leave their homes, these women were on television and their friends and co-workers read about them in the newspapers and online.  Taking such brave actions is not a simple undertaking like purchasing a defective dishwasher or being duped by an unscrupulous lender, like most class representatives.  This case required much more.  And these two Named Plaintiffs have substantial careers—Ms. Friedman as a nurse practitioner and Mrs. Miller as a successful sales executive for a large company.

Not only was their public and private embarrassment on file with this Court, these women were exposed to public humiliation for the benefit of the Class.  Plaintiffs Friedman, Miller and Henry-MacArthur appeared in the media to bring attention to the hair loss and to this case.  They were interviewed by The Today Show.  Stories about their hair loss and suffering were published in many media

1    outlets such as: USA Today, The Daily Beast, Cosmopolitan, New York Daily

2    News, and hundreds of smaller local news outlets.   Many stories included

3    headlines like this: "A Florida woman named Amy Friedman filed a class action

4    lawsuit on July 31, 2014…"

5         In the end, it was this outcry from the media, led by these two individuals

6    that likely caused the FDA to investigate and the substantial increase in complaints

7    made to Defendants.   Ultimately, this media effort by Named Plaintiffs Friedman

8    and Miller helped encourage Defendants to come to the settlement table.   Absent

9    the public outcry, this class action may never have settled.   Class Counsel and the

10   Named Plaintiffs are aware that the incentive awards negotiated for Friedman and

11   Miller are higher than average.   However, the herculean efforts and public

12   embarrassment they went through provides an entirely reasonable basis for the

13   requested awards.   Plaintiffs Friedman and Miller contemporaneously submit

14   declarations detailing the effect of this litigation upon them.   *See* Declarations of

15   Amy Friedman Decl. and Judi Miller.

16        In recognition that Ms. Henry-MacArthur and Ms. Rogers were not deposed

17   and did not take such an extensive role before the media, their incentive awards are

18   well within the guidelines at $5,000 and $2,500 respectively.   Ms. Henry-

19   MacArthur was initially dismissed as a result of the Court's ruling on arbitration

20   and was brought back into the case to represent those individuals.   She also spoke

21   to the media regarding her hair loss and spoke about the effect of arbitration.   Ms.

22   Rogers, was added to the lawsuit during the settlement negotiations as a

23   representative of those who purchased WEN from QVC.

24        "Many courts in the Ninth Circuit have ... held that a $5,000 incentive award

25   is 'presumptively reasonable.'"   *Hawthorne v. Umpqua Bank*, 2015 WL 1927342,

26   *8 (N.D. Cal. 2015); *see Resnick v. Frank*, 779 F.3d 934, 947 (9th Cir. 2015)

27   (approving $5,000 incentive award even though it was "roughly 417 times larger

28   than the $12 individual award" that unnamed class members would receive).   *See*

*also Chambers v. Whirlpool Corp.*, 2016 WL 5922456 at \*20 (October 11, 2016) (approving $4,000 awards and recognizing $5,000 as presumptively reasonable). As a result, the awards provided to Ms. Henry-McArthur and Ms. Rogers should be considered presumptively reasonable by this Court and be approved.

Thus, the proposed Named Plaintiffs' Incentive Awards are appropriate considering the time and effort involved in representing the interests of the Class. Even the payments at the higher end of the spectrum for Plaintiffs Friedman and Miller represent only modestly more than the individual cap for Tier 2 claims. And, in the case of Plaintiffs Henry-McArthur and Rogers, substantially less.  As such, the proposed incentive awards are reasonable under these circumstances and should be finally approved.

**VI. CONCLUSION**

As the analysis above and supporting documents demonstrate, the requested Attorney's Fees and Costs and Named Plaintiff Incentive Awards, clearly meet the standard for final approval.   Therefore, Plaintiffs respectfully request that this Honorable Court approve the requested Attorney's Fees and Costs award, approve the Named Plaintiff Incentive Awards, and enter the Proposed Final Approval Order submitted by the parties.

DATED:      May 1, 2017

**JOHNSON & JOHNSON**

**By:**   s/      Jordanna G. Thigpen

Neville L. Johnson (SBN 66329)
njohnson@jjllplaw.com
Douglas L. Johnson (SBN 209216)
djohnson@jjllplaw.com
Jordanna G. Thigpen (SBN 232642)
(*Pro Hac Vice*)
jthigpen@jjllplaw.com
JOHNSON & JOHNSON, LLP
439 North Canon Drive, Suite 200

Beverly Hills, California 90210
Telephone:  (310) 975-1080
Facsimile:  (310) 975-1095

By:   s/ William Anderson
      William Anderson
      (*Pro Hac Vice*)
      wanderson@cuneolaw.com
      Charles J. LaDuca
      (*Pro Hac Vice*)
      charlesl@cuneolaw.com
      Michael Flannery (SBN 196266)
      mflannery@cuneolaw.com
      CUNEO GILBERT & LADUCA, LLP
      507 C Street, NE
      Washington, DC 20002
      Telephone:  (202) 789-3960
      Fax:  (202) 789-1813

By:   s/B Brian W. Warwick
      Brian W. Warwick
      (*Pro Hac Vice*)
      bwarwick@varnellandwarwick.com
      Janet R. Varnell
      (*Pro Hac Vice*)
      jvarnell@varnellandwarwick.com
      Steven T. Simmons
      (*Pro Hac Vice*)
      ssimmons@varnellandwarwick.com
      P.O. Box 1870
      Lady Lake, FL  32158
      Telephone:  (352) 753-8600
      Facsimile:  (352) 753-8606

      *Class Counsel*

## ATTESTATION RE: SIGNATURES

I, Jordanna G. Thigpen, am the ECF User who is filing Plaintiffs'
Memorandum of Law in support of Motion and Unopposed Motion for Attorneys'
Fees and Costs and Class Representatives' Fee Awards in Class Action Settlement.
I attest that all other signatories listed, and on whose behalf the filings are being
submitted, concur in the content of such filings and have authorized the filing of
such documents.

DATED: May 1, 2017                    **JOHNSON & JOHNSON LLP**

/s/ Jordanna G. Thigpen
Neville L. Johnson (SBN 66329)
njohnson@jjllplaw.com
Douglas L. Johnson (SBN 209216)
djohnson@jjllplaw.com
Jordanna G. Thigpen (SBN 232642)
jthigpen@jjllplaw.com
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone: 310.975.1080
Facsimile: 310.975.1095