1
2
3
4
5
6
7
8

# United States District Court
# Central District of California

9
10
11
12
13
14
15
16

AMY FRIEDMAN; JUDI MILLER;
KRYSTAL HENRY-McARTHUR; and
LISA ROGERS, on behalf of themselves
and all others similarly situated,

              Plaintiffs,

   v.

GUTHY-RENKER, LLC and WEN BY
CHAZ DEAN, INC.,

              Defendants.

Case No. 2:14-cv-06009-ODW(AGRx)

**ORDER GRANTING MOTION FOR
FINAL APPROVAL OF CLASS
SETTLEMENT [216] AND
GRANTING MOTION FOR
ATTORNEYS' FEES AND COSTS
[218]**

17
18
19
20
21
22
23
24
25
26
27
28

## I.   INTRODUCTION

Plaintiffs Amy Friedman, Judi Miller, Krystal Henry-McArthur, and Lisa Rogers bring this class action lawsuit against Defendants Guthy-Renker, LLC and Wen By Chaz Dean, Inc., alleging that Defendants' line of "WEN" haircare products caused their hair to fall out.  In mid-2016, the parties reached a class-wide settlement of all claims, and the Court preliminarily approved the settlement.  (ECF No. 178.) Pending before the Court are the following: (1) Motion for Final Approval of the Class Settlement; (2) Motion for Attorneys' Fees, Costs, and Incentive Awards; and (3) Objections to the Class Settlement.  For the reasons discussed below, the Court **GRANTS** both Motions and **OVERRULES** the Objections to the Settlement.  (ECF Nos. 216, 218.)

## II.   BACKGROUND

**A.   Factual Background**

The Court has previously recited at length the factual and procedural history underlying this case (ECF Nos. 41, 146, 167, 178), and thus the Court only briefly summarizes those facts here.  Wen By Chaz Dean designed the "WEN" line of haircare products and licensed those products to Guthy-Renker, which in turn manufactured, marketed, and sold them throughout the United States.  According to Plaintiffs, the WEN Hair Care Products cause hair loss and scalp irritation.  Plaintiffs further allege that Guthy-Renker falsely advertised the product as safe, failed to warn consumers about the potential for hair loss, and erroneously instructed consumers to use excessive amounts of the product.

**B.   Procedural History Prior to Preliminary Approval**

Following pre-certification discovery, and after four mediations, the parties reached a class-wide settlement of all claims in this action.  (ECF Nos. 135, 137, 140, 144; Class Counsel Decl. ¶ 4, ECF No. 153-2.)  The total settlement fund amounted to $26.25 million.  (Class Counsel Decl., Ex. A ("Settlement Agreement") § 6, ECF No. 170-1.)  The settlement agreement established a two-tier claim system for class members.  Under Tier 1, any class member who purchased WEN Hair Care Products could submit a claim without any supporting documentation for a one-time payment of $25.  (*Id.* § 6A.)  Under Tier 2, class members who suffered more extensive injuries could recover up to $20,000 by submitting a claim with supporting documentation.  (*Id.* § 6B.)  An independent special master would then analyze and value the claim.  (*Id.*)  The special master's decision would be final and not subject to appeal or reconsideration.[1]  (*Id.*)  Any class member who either submitted a Tier 1 or Tier 2 claim, or who did not affirmatively opt out of the class, would release all advertising and bodily injury claims against Defendants.

---

[1] In short, although not denominated as such, it appears that Tier 1 claims were intended to compensate the class for false advertising, while Tier 2 claims appeared intended to compensate class members for personal injuries.

The agreement reserved up to $5,000,000 to pay for Tier 1 claims, meaning that each claimant would receive the full $25 payout only if 200,000 or fewer class members submitted Tier 1 claims. (*Id.*) The total amount allotted to pay Tier 2 claims would be the amount remaining in the fund after Tier 1 claims, incentive awards, administrative costs, and attorneys' fees were paid out (which the Court originally estimated to be $13.86 million). (Order at 4, ECF No. 178.) In the event the number of claims submitted in either tier exceeded the funds set aside for that tier, all claim payments within the tier would be proportionally reduced. (*Id.* §§ 7, 15.) Finally, the agreement called for the payment of $6.5 million in attorneys' fees, a total of $57,500 in incentive awards to the named plaintiffs, and close to $1 million (approximately) in administrative costs. (*Id.* §§ 8, 9, 11, 13, 14; *see also* Order at 4–5.) For a more in-depth recitation of the terms of the settlement, see Order at 4–8, ECF No. 178.

On October 28, 2016, the Court conditionally certified a settlement-only class and preliminarily approved the terms of the settlement and the form and method of notice. (ECF No. 178.) The Court noted, however, that it was troubled by: (1) the potential for significant reductions in claim payouts; (2) the fact that the incentive awards were at or near the ceiling established by the Ninth Circuit for such awards; and (3) the size of the fee award to class counsel. (*See* Order at 15–18.) The Court set a final settlement approval hearing for June 5, 2017. (*Id.* at 23.)

## C.   Procedural History Following Preliminary Approval

### 1.   Class Notice

The settlement administrator, Dahl Administration, LLC ("Dahl"), used several methods to give notice to the class. First, following preliminary approval of the settlement, the parties subpoenaed the records of various retailers to obtain contact information for all of the class members. (*See* Omnibus Decl. ¶ 11–12, ECF No. 216-1; Dahl Decl. ¶ 6, ECF No. 217.) Based on these records, the administrator estimated that there were approximately 8.1 million people in the class. (Dahl Decl. ¶ 7.) Approximately 60% of these class members ultimately received notice of the

settlement by e-mail,[2] and the remaining members received notice by regular mail where a mailing address could be identified.  (*Id.* ¶¶ 10–13.)  Approximately 97.12% of the class received either e-mail notice or mail notice of the settlement.  (*Id.* ¶ 13.)

Second, the administrator issued notice by publication.  (*Id.* ¶¶ 14–15.)  The administrator implemented a web-based publication campaign between December 23 and December 26, 2016, using banners on social media.  (*Id.*)  In addition, for what it is worth, there was extensive media coverage of the Court's preliminary approval of the settlement.[3]  Third, the administrator set up a website that made available details of the settlement, the long-form notice of the settlement, a list of important dates and deadlines, a link to file an online claim, settlement documentation, and other resources related to this action and its settlement.  (*Id.* ¶¶ 16–17.)  Finally, the administrator also set up an automated and dedicated toll-free telephone system that provided information regarding the settlement.  (*Id.* ¶¶ 18–20.)  As of May 1, 2017, Dahl had also received and, where appropriate, responded to 15,294 emails and 2,076 pieces of written correspondence concerning the settlement.  (*Id.* ¶ 21.)

## 2.      Opt Outs and Objections

The administrator received 3,773 timely requests to opt out of the settlement.  (*Id.* ¶ 22.)   The administrator also received 10 timely written objections to the settlement and 2 untimely objections.  (*Id.* ¶ 23.)

## 3.      Tier 1 and 2 Claims Filed

Tier 1.   The settlement administrator received 398,709 timely Tier 1 claims.  (Nolan & Dahl Decl. ¶ 8, ECF No. 216-2.)  This was well in excess of the 200,000

---

[2] That is, the e-mail sent to them did not bounce back to the sender as undeliverable.  (Dahl Decl. ¶¶ 9–10.)

[3] *See, e.g.*, Glamour, *The Class-Action Settlement Against Wen Hair Care Is Officially Moving Forward*,   https://www.glamour.com/story/wen-hair-care-lawsuit-hair-loss-moving-forward   (last visited July 20, 2017); People, *$26 Million Hair Loss Lawsuit Settlement Moves Forward for Wen Hair Care Products*, http://people.com/style/wen-hair-care-lawsuit-moves-forward/ (last visited July 20, 2017); CBS Los Angeles, *Class-Action Lawsuit Over Wen Hair Products Gets Preliminary Settlement Approval*,   http://losangeles.cbslocal.com/2016/10/31/class-action-lawsuit-over-wen-hair-products-gets-preliminary-settlement-approval/ (last visited July 20, 2017).

4

1  maximum required for a full payout on each claim, and thus the parties predicted that

2  each claimant would receive only $12.54—only 50% of what the parties originally

3  predicted.  (*Id.*)

4       <u>Tier 2</u>.  The settlement administrator received somewhere between 25,000 and

5  29,000 timely Tier 2 claims.  (*Id.* ¶ 9; Nolan Suppl. Decl. ¶ 5, ECF No. 228-3.)  Judge

6  Nan Nolan, who is a retired magistrate judge, was appointed as special master to

7  evaluate these claims.  (Nolan & Dahl Decl. ¶ 2.)  As of May 1, 2017, Judge Nolan

8  had reviewed and scored approximately 60% of the claims filed.  (*Id.* ¶ 14.)  Based on

9  her review, Judge Nolan predicted that no pro-rata reductions would be needed for

10  Tier 2 claims.  (*Id.* ¶ 25.)

11  **C.   Final Approval Hearing**

12       On June 5, 2017, the Court held a final approval hearing.  (ECF No. 225.)  At

13  that hearing, the Court expressed its dissatisfaction with the following: (1) that Tier 1

14  claimants were receiving only half of the payout that the settlement notices reasonably

15  led them to believe that they would receive; (2) the proposed incentive awards for

16  Amy Friedman and Judi Miller were excessive; and (3) class counsel's fee recovery

17  was excessive.  (*See generally* ECF No. 231.)  The Court subsequently issued an order

18  directing the parties to inform the Court whether they intended to take any steps to

19  address the Court's concerns regarding these issues.  (ECF No. 226.)

20       On July 3, 2017, the parties submitted a report stating that they had amended

21  the agreement to address the Court's concerns.  (ECF Nos. 228, 229.)  First, class

22  counsel had agreed to reduce its fee request by $1 million, and to contribute that sum

23  to paying Tier 1 claims.  (Joint Report at 1–2.)  In addition, the parties removed the $5

24  million cap on the payment of Tier 1 claims, thus allowing unused funds originally

25  earmarked for Tier 2 claims to be used to pay Tier 1 claims instead.  (*Id.*)  By doing

26  this, all Tier 1 claims would be paid out at full value ($25) without making any pro-

27  rata reductions to Tier 2 claim payouts.  (*Id.*; *see also* Dahl Suppl. Decl. ¶ 2, ECF No.

28  228-2.)  Second, named Plaintiffs Amy Friedman and Judi Miller agreed to reduce

their incentive awards to $20,000 each.  (Joint Report at 2–3.)  Finally, the parties requested that the $250,000 cap on the special master's fee be increased to $400,000 to reflect the fact that the number of Tier 2 claims filed was more than six times the number that they originally anticipated receiving.  (Nolan Suppl. Decl. ¶ 5, ECF No. 228-3.)

## III.   LEGAL STANDARD

The approval of a class action settlement takes place in two stages.  *Ontiveros v. Zamora*, 303 F.R.D. 356, 363 (E.D. Cal. 2014).  In the first stage of the approval process, the court preliminarily approves the settlement pending a fairness hearing, temporarily certifies a settlement class, and authorizes notice to the class.  *See Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 473 (E.D. Cal. 2010).  At the fairness hearing, after notice is given to putative class members, the court entertains any of their objections to (1) the treatment of the litigation as a class action and/or (2) the terms of the settlement.  *See Diaz v. Tr. Territory of Pac. Islands*, 876 F.2d 1401, 1408 (9th Cir. 1989) (holding that a court is required to hold a hearing prior to final approval of a dismissal or compromise of class claims to "inquire into the terms and circumstances of any dismissal or compromise to ensure it is not collusive or prejudicial").  Following such a hearing, the court must reach a final determination as to whether the parties should be allowed to settle the class action pursuant to the terms agreed upon. *See Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004).

## IV.   DISCUSSION

### A.   Class Certification

#### 1.   Legal Standard

Class certification is appropriate only if "each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)" are met.  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).  Under Rule 23(a), the plaintiff must demonstrate that the requirements of numerosity, commonality,

typicality, and adequacy are met.  *See* Fed. R. Civ. P. 23(a); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012).  Next, the proposed class must meet the requirements of at least one of the three types of class actions listed in Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2548 (2011).  Under Rule 23(b)(3), the plaintiff must demonstrate that the requirements of predominance and superiority are met.  Fed. R. Civ. P. 23(b)(3).  Finally, where class certification is sought for settlement purposes only, the certification inquiry still "demand[s] undiluted, even heightened, attention."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

### 2.    Discussion

The Court previously concluded that each of the Rule 23(a) and Rule 23(b)(3) requirements were met, and thus conditionally certified a settlement-only class. (Order at 4–8.)    Objectors Christy Whaley Sparks and Ellen Bentz submitted objections arguing that tort claims are generally not suitable for class treatment.  (ECF Nos. 206, 217-11.)    However, there is no *per se* rule in the Ninth Circuit against certifying such claims.  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1230 (9th Cir. 1996).  Moreover, the reason Bentz gives for why such certification might not be appropriate in this particular instance—because tort-based claims are "significant" and thus should not be waivable through the opt out process—is not persuasive, because this concern is not unique to tort-based claims.  Tellingly, Bentz cites no authority for the proposition that potentially high-dollar claims should never receive class treatment, and the authority in this district is to the contrary.  *See Boyd v. Bank of Am. Corp.*, 300 F.R.D. 431, 444 (C.D. Cal. 2014) ("[T]he potentially high value of the claims does not weigh against class certification.").

Sparks also gives several other reasons why litigating the class members' claims as a class action is not superior to litigating them individually.  First, Sparks argues that individual lawsuits would be resolved more quickly than through the class action mechanism.  However, Sparks gives little justification for this conclusion.  She gives no estimate at all as to how long the claims process in this action might take or

how long an individual action would take to resolve.  Moreover, Sparks' objection seems counterintuitive.  The claims process in this settlement simply requires the submission of the class members' evidence for immediate evaluation by the special master.  In contrast, an individual action would require *both* parties to take discovery—which in a products liability case could be extensive even for individual actions—and would potentially require them to try their claims.

Second, for persons who intend to pursue individual claims regardless of the existence of class certification or the class settlement, Sparks argues that they are burdened with the requirement that they timely opt out of this lawsuit before they may do so.  However, again, the same can be said about *all* class actions (or at least Rule 23(b)(3) class actions); this is not an issue that is unique to this particular lawsuit.  Simply pointing out the general burdens of class litigation does not show that class litigation is not the superior method for adjudicating *this* particular dispute.

The Court therefore overrules these portions of Sparks and Bentz's objections and, for the reasons more fully discussed in the Court's preliminary approval order, certifies the class the purpose of this settlement only.

**B.     Settlement Notice**

**1.     Legal Standard**

Class certification notices must comply with Rule 23(c)(2)(B).  "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

The notice must clearly and concisely state in plain, easily understood language:

> (i) the nature of the action;
> (ii) the definition of the class certified;
> (iii) the class claims, issues, or defenses;
> (iv) that a class member may enter an appearance through an attorney if the member so desires;

8

(v) that the court will exclude from the class any member who requests exclusion;

(vi) the time and manner for requesting exclusion; and

(vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B)(i)–(vii).

The Ninth Circuit has approved individual notice to class members via e-mail. *See In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 946 (9th Cir. 2015). It has also approved notice via a combination of short-form and long-form settlement notices. *Id.*; *see also Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 331 (C.D. Cal. 2016) (approving e-mail and postcard notice, each of which directed the class member to a long-form notice); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1204 (C.D. Cal. 2014); *In re Optical Disk Drive Antitrust Litig.*, No. 3:10-MD-02143 RS, 2014 WL 1654028, at *2 (N.D. Cal. Apr. 25, 2014).

For class action settlements, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal quotation marks omitted). The notice "does not require detailed analysis of the statutes or causes of action forming the basis for the plaintiff class's claims, and it does not require an estimate of the potential value of those claims." *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012).

## 2.    Analysis

The Court concludes that the notice provided to class members more than adequately satisfied these requirements. The parties used reasonable efforts to identify all individuals that were part of the class by issuing subpoenas to the retailers of WEN Hair Care Products. (Omnibus Decl. ¶¶ 11–12.) The parties provided individual short-form notice (by e-mail or regular mail) to over 97% of the class.

(Dahl Decl. ¶ 6.)  The remaining 3% of class members received constructive notice through website publication.  (*Id.* ¶¶ 14–15.)[4]  Such notice is sufficient under Rule 23. The Court has also reviewed the short-form notices and publication notice to the class members and is satisfied that it adequately informs the class member of the nature of the action, the class claims, issues, and defenses, the ability of the members to request exclusion from the class, and the time and manner for requesting exclusion.  The notices also give a sufficient overview of the terms of the settlement.  The short-form notices also direct the class member to the long-form notice, which describes in detail the definition of the certified class, and advises the class member of their right to appear and contest the settlement.  Finally, the settlement administrator maintained a website containing extensive information about the settlement and set up a dedicated telephone line regarding the settlement.

In light of this, the Court concludes that the notice provided to the class is the best practicable notice under the circumstances consistent with Rule 23.  *See In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1129 (N.D. Cal. 2015).

## C. Settlement Terms

### 1. Legal Standard

"Assessing a settlement proposal requires the district court to balance a number of factors: the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026.  "Not all of these factors will apply to every class action settlement. . . . The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s)

---

[4] Moreover, numerous class members were likely also alerted to the existence of the settlement via media publications.

advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case.  Ultimately, the district court's determination is nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525–26 (C.D. Cal. 2004) (internal citations and quotation marks omitted).

### 2. Analysis

The Court adopts its analysis granting preliminary approval of the terms of the settlement, subject to the Court's further analysis below concerning issues that have arisen since that preliminary approval.

#### i. Tier 1 Claims

The Court finds final approval of the Tier 1 claims process appropriate.  For the reasons discussed in the preliminary approval order, a $25 payment per claimant is reasonable given the risks of further litigation.  Moreover, because the parties have agreed to increase the amount of money set aside for paying Tier 1 claims such that each claimant will in fact receive $25 each, the Court's previous concerns on the potential pro-rata reduction to claim payouts is moot.

#### ii. Tier 2 Claims

For the reasons discussed in the preliminary approval order, the Court also finds the Tier 2 claims process reasonable.  Moreover, because there will be no pro rata reductions to the payout of Tier 2 claims,[5] the Court finds final approval of the settlement appropriate.

#### iii. Special Master Fee

The Court finds the increase in the special master fee appropriate.  The number of Tier 2 claims actually filed far exceeded the parties' original estimate.  Moreover,

---

[5] In addition, the settlement administrator testified that she valued the claims without artificially squeezing them to fit within the total pot of money set aside for Tier 2 claims.  *See* Hr'g Tr. 28–29 ("Q. Do you believe there is enough money in the common fund to give a fair award to all members of the class? A. And without making any adjustments. . . . Q. Did you back into these numbers you created? A. No, I didn't. I didn't.  I did it from the first two months of where I was teaching myself the story of Wen.").

the parties indicate that this increase will not prevent the Tier 2 claimants from receiving a full pay out on their claims pursuant to the special master's evaluation. (Joint Report at 3–4.)  The Court therefore grants the increase in the special master fee from $250,000 to $400,000.

### iv.    Objections

The Court addresses the arguments submitted by the following objectors in connection with this settlement.[6]  For the reasons discussed below, the Court overrules each objection.

<u>Christy Whaley Sparks</u>.  (ECF No. 206.)  The bulk of Sparks' lengthy objection is to the fairness of the settlement terms.  Sparks' objection to those terms can be divided into three major categories: (1) promoting the strengths of Plaintiffs' case; (2) arguing that the Tier 2 claim amounts are inadequate; and (3) arguing that the Tier 2 claim-filing procedure is excessively onerous.  The Court will address each argument in turn.

*Strengths of Plaintiffs' Case*.  Sparks describes at length what she perceives to be the strength of Plaintiffs' case against Defendants.  First, Sparks points to the presence of several allergens in the Wen Hair Products that she claims is not safe for use and which likely caused the symptoms that many class Plaintiffs experienced.  Second, Sparks contends that WEN does not contain sufficient cleansers, which can result in Seborrheic Dermatitis.    Third, Sparks emphasizes the physical and

---

[6] The Court also notes that it received relatively few objections (12) given the size of the class (8 million).  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (noting that, "[b]y any standard," receiving only three objections out of 57,630 class members "favors approval of the Settlement").  Moreover, not all of the objections even argued against the fairness of the settlement: three objectors argued that the settlement was unfair to *Defendants*, one objector simply pointed out a quirk in the claims filing procedure, and one did not appear to make any argument at all against the fairness of the settlement.  Finally, one objection was from an apparent professional objector and devoid any real argument.  The relatively few legitimate objections thus heavily favors approval of the settlement.  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

1    psychological effect on the user of hair loss, including negative self-esteem and

2    depression.  Fourth, Sparks points to the recent investigation initiated by the Food and

3    Drug Administration into complaints of hair loss caused by WEN.  Sparks accuses

4    Guthy-Renker of not cooperating with the investigation and failing to adequately

5    investigate any connection between use of WEN and hair loss.  Finally, Sparks also

6    accuses Defendants of hindering consumers from investigating the link between use of

7    WEN and hair loss.  Sparks cherry-picks two e-mails sent by Defendants to consumers

8    where Defendants downplay the possibility of such a link.

9        The Court does not find these reasons sufficient to scuttle the settlement.  First,

10   while there may be some WEN users who have suffered some of the more serious

11   symptoms and conditions that Plaintiff describes, there is no evidence that all or even

12   most users suffered such injuries.  Moreover, in response to Sparks' objection,

13   Defendants present substantial evidence suggesting that the ingredients in WEN

14   products do not in fact cause hair loss or scalp irritation at all.  Thus, Sparks' objection

15   does little to show that the evidence as to liability is particularly lopsided in favor of

16   the class.  And for any class member who did suffer unusually severe symptoms and

17   who believes that the class settlement does not adequately compensate him or her for

18   her injury, that person may opt out of the class and pursue an individual action.

19   Finally, Sparks' overtures as to Defendants' lack of cooperation with the FDA or

20   consumers does not even relate to the fairness of the settlement at all; it seems

21   designed simply to cast Defendants in a bad light.

22       *Onerous Claim Filing Procedures*.   Sparks argues that the claim filing

23   procedures are onerous and do little to relieve the class of the risks of continued

24   litigation.  First, Sparks argues that the settlement still requires class members to

25   prove causation.  That is, the settlement claim forms request information regarding

26   other medical conditions that could affect a claimant's hair loss (i.e., pregnancy,

27   thyroid conditions, etc.), which Sparks believes is for the purpose of reducing

28   payment based on a causation inquiry.  Second, Sparks argues that the special master

1  will be making decisions based on the credibility of each claimant and their

2  documentation, which is exactly what a jury would do anyway.  Third, Sparks argues

3  that the settlement requires documentation beyond what would be necessary at trial,

4  yet also caps the total amount recoverable.

5       The Court is also not convinced by these arguments.  First, the fact that the

6  Special Master can consider other alternate or contributing causes of hair loss does not

7  make the settlement unfair.  Claimants are entitled to recover under Tier 2 to the

8  extent that their use of WEN caused them hair loss or other injury.  Where a claimant

9  suffered hair loss that is clearly attributable to another cause, the claimant should not

10 receive recovery.  Similarly, if a claimant suffered from another condition that is

11 linked to hair loss, the claimant's recovery should be limited to that hair loss caused

12 by the use of WEN rather than the total amount of hair loss they might have suffered.

13 Thus, allowing the special master to consider issues of causation is not a mark against

14 the settlement.  As to Sparks' second argument, the fact that the special master is still

15 making some credibility determinations does not mean that the settlement lacks any

16 benefit for the class.  Finally, the submission of documentation always bolsters the

17 credibility of a claimant's claim—whether through this claims process or at trial.  The

18 bare fact that Sparks *could* turn up at trial without any documentation of her injury

19 does not mean that a jury would award her anything.  Thus, requiring documentation

20 does not make the settlement unfair or unreasonable in comparison to litigating the

21 claim.

22      *Tier 2 Payout is Insufficient.*  Sparks argues that the money set aside to payout

23 Tier 2 claims is insufficient.  However, as it appears that there have been no pro rata

24 reductions to the Tier 2 claim payouts, this issue is moot.

25      Melissa Randolph.  (ECF No. 217-11.)  Randolph submitted an objection that

26 stated only that she "fe[lt] the relief and notice is inadequate and the compensation is

27 excessive."  However, Randolph gives no explanation as to why she believes either

28 the relief or notice is inadequate.  This precludes any meaningful evaluation of her

objection.  Moreover, the issue of attorneys' fees (if that is what Randolph is referring to by "compensation") is discussed in more detail elsewhere in this order.  The Court therefore overrules this objection.

Lindsey Buss, Christina Brown, Patricia Seastrom-Miller.  (ECF No. 217-11.)  These persons object to the settlement on the basis that they do not believe that there were any problems with any WEN Haircare Products, and thus the Court should not require Defendants to pay anything in settlement.  However, class members do not have standing to object that the settlement is unfair to *Defendants* rather than the class.  *See In re First Capital Holdings Corp. Fin. Prod. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994) (class members must have Article III standing to object to the settlement).  The Court therefore overrules this objection.

Rosemary Renz.  (ECF No. 217-11.)  Renz noticed "unusual breakage" in her hair after using WEN and stopped using the product thereafter.  She still has seven bottles of WEN products that she wishes to return for a full reimbursement, and she objects to the settlement on the basis that this is not a settlement option.  She seeks $262 in reimbursement.  Full reimbursement for multiple bottles purchased, however, would not be a compromise settlement, and thus is an unrealistic request.  The Court therefore overrules this objection.

Kathleen Horn.  (ECF No. 217-11.)  Horn believes that a $25 settlement payment is insufficient.  She states that she had a burning sensation on her scalp after using WEN and that she is losing more hair than normal.  It appears that Horn overlooked the Tier 2 claims process before she filed this objection, which provides a procedure for claiming compensation based on hair loss.  The Court therefore overrules this objection.

Tremaine Charles.  (ECF No. 217-11.)  Charles believes that a $25 settlement payment is insufficient.  She also believes that the Tier 2 claims process is unduly burdensome in that it requires her to submit documentation that she no longer has, and that she is suffering emotional distress for which she should be compensated.  As an

initial matter, Charles should have filed a Tier 2 claim rather than a simple Tier 1 claim.  Moreover, requiring documentation is not a deficiency in the Tier 2 process—any lawsuit would require her to provide such documentation.  If she believes that she is entitled to more money than what the settlement offers, she can also opt out and pursue an individual action.  The Court therefore overrules this objection.

Pamela Sweeney.  (ECF No. 217-11.)  Sweeney objects to the settlement on a number of vague grounds, including: (1) the claims administration process is not properly overseen; (2) attorneys' fees are too high and are inadequately detailed; and (3) she joins all other objections made by other objectors.  Sweeney's objections are too vague for the Court to properly analyze, and in any event seem to raise issues that are addressed elsewhere in Order.  The Court therefore overrules this objection.

Pamela Behrend.  (ECF No. 217-11.)  Behrend objects to the settlement on the grounds that her home state (Pennsylvania) and several other states provide statutory damages for unfair trade practices in excess of $25.  Thus, she argues that the claims of the Plaintiffs in this case, who are residents of states that do not have such statutory damages, are not typical of the class.  She also argues that the amount set aside for Tier 1 claims is insufficient.  Finally, she argues that the attorneys' fees in this case are excessive.

The Court does not find these objections persuasive.  First, the states in which the named Plaintiffs reside is not what drives the application of California law to the nationwide class—indeed, the fact that *none* of the named Plaintiffs are residents of California shows this.  Moreover, Defendants' lack of connection to Pennsylvania greatly increases the difficulty of certifying a nationwide class based on Pennsylvania law.  Second, to the extent Behrend believes the settlement to be inadequate because there are states in which the maximum statutory damages exceeds $25, this also does not warrant withholding settlement approval.  Pretrial settlements almost inevitably result in a reduced pay out based on a compromise; the fact that the settlement does not award all damages that one may be entitled to if they obtained a judgment fully in

their favor does not mean that the settlement is inadequate.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving settlement that provided 9% of the maximum potential recovery, and suggesting that a "smaller certain award" is often preferable to "seek[ing] the full recovery but risk getting nothing").  Finally, the Court addresses Behrend's remaining objections elsewhere in this order.  The Court therefore overrules this objection.

Ellen Bentz.  (ECF No. 217-11.)  Bentz objects that: (1) the total settlement amount is insufficient to compensate the class; (2) attorneys' fees sought are excessive; (3) the opt-out period was not long enough to meaningfully evaluate the settlement; (4) the damages cap for Tier 2 claims is too low; (5) tort-based claims should not be litigated as class actions; and (6) incentive awards to Plaintiffs are excessive.  As the Court noted in the final approval hearing, the Court agrees that the attorneys' fees and incentive awards are excessive, and thus has reduced those awards. *See infra*.  In addition, the Court considers the length of the opt out period to be adequate for a diligent class member to evaluate their injury and compare it to the benefits that the settlement has to offer.  Finally, the Court has considered and overruled elsewhere in this Order arguments similar to the remaining arguments that Bentz makes.  The Court therefore overrules this objection.

Thomas Paciorkowski.  (ECF No. 217-11.) Paciorkowski objects to the claims process.  Specifically, while he did not purchase the product, he used the product, yet the online Tier 1 claim-processing form requires the claimant to enter a purchase date in order to obtain a recovery.  Thus, he instead submitted a paper claim and left the "purchase date" blank.  Paciorkowski requests that the Court address the dilemma of how users (but non-purchasers) of the product can submit Tier 1 claims without entering a purchase date.  It appears, however, that Paciorkowski has solved his own dilemma (i.e., by submitting a paper claim form), and thus it is unclear what further relief he wishes the Court to order.  In addition, Paciorkowski concedes that he contacted the settlement administrator about this issue, who instructed him to simply

enter any date into "purchase date" query.  This explicit advice should alleviate any concerns Paciorkowski has about submitting incorrect information in the claim forms.  The Court therefore overrules this objection.

<u>Luwona Ferguson</u>.  (ECF No. 217-11.)  It is unclear what Ferguson's objection is.  She indicates that she is a former cosmetologist and that she stopped using WEN products and asked Guthy-Renker to stop sending her such products.  She asked Guthy-Renker if she could return the WEN products she has, but Guthy-Renker told her to just "hold on to it."  Beyond this, however, Ferguson does not state what it is about the settlement that she finds to be objectionable.  The Court therefore overrules this objection.

## D.     Incentive Awards

In the Ninth Circuit, there is no per se rule against incentive awards for class representatives.  However, "district courts [should] scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013).  In evaluating incentive awards, the court should look to "the number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 947 (9th Cir. 2015).  *Compare id.* (approving $5,000 incentive awards for nine class representatives with $27.25 million settlement fund), *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 457 (9th Cir. 2000) (approving $5,000 incentive award for two class representatives with $1.725 million settlement fund), *and In re U.S. Bancorp Litig.*, 291 F.3d 1035, 1038 (8th Cir. 2002) (approving $2,000 incentive awards to five named plaintiffs out of a class potentially numbering more than 4 million in a settlement of $3 million), *with Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) (disapproving incentive awards averaging $30,000 for 29 class representatives with a $14.8 million settlement).

Here, the incentive awards for Henry-McArthur ($5,000) and Rogers ($2,500)

are well within any metric used to determine the adequacy of incentive awards. Moreover, Friedman and Miller have agreed to reduce their incentive awards to $20,000 each.   While these two latter awards still border on the threshold for disapproval, *see Staton*, 327 F.3d at 977, the Court is satisfied that their participation in this lawsuit justifies the award.   The Court therefore approves these incentive awards.

**E.     Attorneys' Fees**

Class counsel seeks an award of $5.5 million in attorneys' fees, which is a $1 million reduction from the amount they initially sought.   "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."   *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).   "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method."   *Id.* at 942.   "Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.   Applying this calculation method, courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure."   *Id.*   However, the Court should not use a "mechanical or formulaic approach [to determining attorneys' fees] that results in an unreasonable reward."   *Id.* at 994.   Thus, the Court should cross-check a percentage-of-the-fund approach with a lodestar approach in appropriate circumstances.   *Id.*

Here, the fee award contemplated by Class Counsel is 20.9% of the total settlement fund, and thus is presumptively reasonable under the percentage-of-recovery calculation.   Moreover, having considered (1) the information counsel has

provided regarding the number of hours expended on the litigation and a reasonable hourly rate, (2) arguments of counsel at the final approval hearing, (3) the recovery obtained for the class, and (4) the risk counsel took in pursuing this action, the Court is satisfied that $5.5 million is a reasonable fee to award class counsel.

## IV.    CONCLUSION

For the reasons discussed, the Court **GRANTS** the Motion for Final Approval of Class Settlement (ECF No. 216) and **GRANTS** the Motion for Attorneys' Fees, Costs, and Incentive Awards (ECF No. 218).   The Court **OVERRULES** all Objections to the Settlement.  The Court shall enter a modified version of the parties' proposed judgment

.

**IT IS SO ORDERED.**

August 21, 2017

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**