Neville L. Johnson (SBN 66329)
njohnson@jjllplaw.com
Douglas L. Johnson (SBN 209216)
djohnson@jjllplaw.com
Jordanna G. Thigpen (SBN 232642)
jthigpen@jjllplaw.com
**JOHNSON & JOHNSON, LLP**
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone:  (310) 975-1080

William Anderson, (*Pro Hac Vice*)
wanderson@cuneolaw.com
Charles J. LaDuca, (*Pro Hac Vice*)
charles@cuneolaw.com
Michael J. Flannery (SBN 196266)
mflannery@cuneolaw.com
**CUNEO GILBERT & LADUCA, LLP**
4725 Wisconsin Avenue, NW
Suite 200
Washington, DC 20002
Telephone:  (202) 789-3960

Brian W. Warwick, (*Pro Hac Vice*)
bwarwick@varnellandwarwick.com
Janet R. Varnell, (*Pro Hac Vice*)
jvarnell@varnellandwarwick.com
**VARNELL & WARWICK, P.A.**
P.O. Box 1870
Lady Lake, FL  32158
Telephone:  (352) 753-8600

Attorneys for Plaintiffs and the Proposed Class

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| **AMY FRIEDMAN, JUDI MILLER, KRYSTAL HENRY-MCARTHUR, and LISA ROGERS on behalf of themselves and all others similarly situated,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**GUTHY-RENKER LLC and WEN BY CHAZ DEAN, INC.,**<br><br>**Defendants.** | Case No. 2:14-cv-06009-ODW-AGR<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR APPEAL BOND**<br><br>Judge:  Hon. Otis D. Wright II<br>Motion Date:  November 20, 2017<br>Time:  1:30 p.m.<br>Location:  Courtroom 5D |

i

# <u>TABLE OF CONTENTS</u>

**Page**

I.  INTRODUCTION ...................................................................................... 1

II.  RULE 7-3 CERTIFICATION .................................................................... 2

III.  BACKGROUND ....................................................................................... 3

IV.  ARGUMENT ............................................................................................ 4

    A.  Legal Standard For Issuance of an Appeal Bond ............................ 4

    B.  Pamela Sweeney Should Be Required to Post a Bond .................... 5

        1.  Mrs. Sweeney Has Not Demonstrated An Inability To Pay A Bond ........................................................................... 6

        2.  There Is A Substantial Risk That Mrs. Sweeney Will Not Pay Costs If Her Appeal Is Unsuccessful ........................... 7

        3.  Mrs. Sweeney's Appeal Is Meritless .................................... 7

    C.  Ellen Bentz Should be Required to Post a Bond ............................. 8

        1.  Ms. Bentz Has Not Demonstrated An Inability To Pay A Bond ................................................................................... 9

        2.  There Is A Substantial Risk That Ms. Bentz Will Not Pay Costs If Her Appeal Is Unsuccessful ................................. 10

        3.  Ms. Bentz's Appeal Is Without Merit ................................. 10

    D.  Pamela Behrend Should be Required to Post a Bond .................... 11

        1.  Mrs. Behrend Testified That She Has The Financial Resources To Post A Bond .................................................. 12

        2.  Mrs. Behrend Poses A Risk Of Nonpayment of Costs ........... 12

        3.  Mrs. Behrend's Appeal Has No Merit .................................. 12

    E.  Amount of the Bond ....................................................................... 13

        1.  Appellate Costs .................................................................. 13

i

1

2

2.  Settlement Administration Costs ............................................ 14

V.  CONCLUSION ............................................................................... 15

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

# **TABLE OF AUTHORITIES**

3

**Cases**

4

*Azizian v. Federated Dep't Stores, Inc.*,

5

 499 F. 3d 950 (9th Cir. 2007)........................................................................4

6

*Dennings v. Clearwire Corp.*,

7

 928 F.Supp.2d 1270 (W.D. Wash. 2013)...............................................5, 15

8

*Devlin v. Scardelletti*,

9

 536 U.S. 1 (2002) .........................................................................................13

10

*Embry v. ACER Am. Corp.*,

11

 2012 WL 2055030 (N.D. Cal. 2012)........................................................7, 10

12

*Fleury v. Richemont North Amer., Inc.*,

13

 2008 WL 4680033 (N.D. Cal. 2008)............................................................5

14

*In re Initial Pub. Offering Sec. Litig.*,

15

 728 F. Supp. 2d 289 (S.D.N.Y. 2010).......................................................6, 9

16

*In re Netflix Privacy Litig.*,

17

 2013 WL 6173772 (N.D. Cal. 2013)............................................................5

18

*In re Nutella Marketing and Sales Practices Litigation*,

19

 589 Fed. Appx. 53 (3d. Cir. 2014) .............................................................13

20

*Miletak v. Allstate Ins. Co.*,

21

 2012 WL 3686785 (N.D. Cal. 2012)....................................................4, 5, 15

22

*Redwen v. Sino Clean Energy, Inc.*,

23

 2013 WL 12128684 (C.D. Cal. 2013)..........................................................5

24

*Schulken v. Washington Mut. Bank*,

25

 2013 WL 1345716 (N.D. Cal. 2013)........................................................7, 10

26

*Shames v. Hertz Corp.*,

27

 2013 WL 3155019 (S.D. Cal. 2013) ...........................................................5

28

# I.  **INTRODUCTION**

Despite the exacting analysis of the Class Action Settlement conducted by this Court, three objectors with questionable motives and equally questionable behavior threaten to substantially delay thousands of Class Member claims, exclusively for personal gain.  The meritless and boilerplate arguments raised by the now-Appellants have already been considered and rejected by this Court and do not warrant a protracted delay.  These appeals were filed for tactical reasons and are intended to only serve the self-interest of three Class Members who could have opted out to pursue individual claims.  Instead, they opted to object to the settlement and appeal in order to leverage the harm to the Class caused by the delay to extort funds from Class Counsel.  Although purportedly filed *pro se*, these appeals are being prosecuted by three lawyers hiding in the shadows and evading the reach of this Court.  Even though none of the three lawyers hold California bar cards, they are nevertheless actively practicing law in California on behalf of these purportedly *pro se* litigants.  There is no doubt that these are professional objectors that have no real interest in having the Settlement scuttled, only in enriching themselves at the cost of the Settlement.

The *Manual for Complex Litigation* distinguishes between *bona fide* objectors and what have become known as "professional objectors" that now confront this Court:

> Some objections, however, are made for improper purposes, and benefit only the objectors and their attorneys (e.g., by seeking additional compensation to withdraw even ill-founded objections). An objection, even of little merit, can be costly and significantly delay implementation of a class settlement. Even a weak objection may have more influence than its merits justify in light of the inherent difficulties that surround review and approval of a class settlement.  Objections

1    may be motivated by self-interest rather than a desire to win significant

2    improvements in the class settlement.

3    *Manual for Complex Litigation, Fourth* § 21.643 (2004).

4    This Court should not countenance this effort to increase litigation costs and

5    hold up tangible relief to Class Members without requiring the Appellants to post

6    an appropriate appeal bond.  This Court has, at every turn, held all the litigants to a

7    high standard and attempted to protect the rights of absent Class Members,

8    admonishing Plaintiffs' counsel to work efficiently and effectively for the benefit

9    of the Class.  Plaintiffs and the Class respectfully request that the Court require the

10   same of these Appellants.  If the Appellants mean to delay relief to this Class, they

11   ought to bear the cost and risk of that delay; those costs should not be borne by the

12   Class.  If their appeals have actual merit, Appellants should not fear posting a

13   reasonable bond.

14   Because each Appellant readily meets the established criteria for issuance of

15   an appeal bond, the Parties[1] respectfully request that the Court require that each

16   Appellant post an appeal bond in the amount of $48,326.50, comprised of: (1)

17   anticipated settlement administration fees of $42,499.00; and (2) transcript, filing,

18   copy, binding and other reasonable fees associated with litigation of the appeal of

19   $1,942.50 for each Appellee—a total of $5,827.50 in hard costs associated with the

20   appeal.

21   **II.    <u>Rule 7-3 Certification</u>**

22   Pursuant to Local Rule 7-3, prior to filing this motion, Plaintiffs' counsel

23   met and conferred with each Appellant.  Plaintiffs' counsel met and conferred with

24   Pamela Sweeney on October 6, 2017, Mrs. Sweeney indicated she would not agree

25   to post a bond in excess of $500.

26   After emailing *pro se* Appellant Pamela Behrend and the attorney from her

27

28   [1] Both Defendants join this motion for purposes of the relief sought, and stated that they anticipated accruing hard costs associated with the appeal consistent with those of Plaintiffs.  *See* Section II, *infra*.

1    husband's law firm who represented her in deposition, Plaintiff's counsel received

2    an email from a professional objector attorney named, N. Albert Bacharach, Jr.

3    Mr. Bacharach entered an appearance in the Ninth Circuit on Mrs. Behrend's

4    behalf on October 4, 2017.  Plaintiffs' counsel met and conferred with Mr.

5    Bacharach on October 10, 2017.  Counsel indicated that Mrs. Behrend would not

6    be willing to post a bond in excess of $1,000.

7        Plaintiff's counsel also emailed *pro se* Appellant Ellen Bentz and were

8    contacted by the lawyer who wrote Ms. Bentz's objection, defended her

9    deposition, and paid her appellate filing fee, Bryce Lenox.  Plaintiffs' counsel met

10   and conferred with Mr. Lenox, on October 10 and October 11, 2017.  Mr. Lenox

11   indicated that his firm would be entering an appearance in the Ninth Circuit, but to

12   date that has not occurred.  Purported counsel for Ms. Bentz indicated that she

13   would be unwilling to post any bond in any amount.

14       Plaintiffs' counsel also met and conferred with Janelle P. Kilies, counsel for

15   Defendants Guthy-Renker, and Barry Schirm, counsel for WEN by Chaz Dean,

16   Inc. On October 19, 2017, Mrs. Kilies and Mr. Schirm, indicated that their clients

17   join this motion for purposes of the relief sought.  *See* Declaration of William

18   Anderson in Support of Motion to Order Appeal Bond ("Anderson Decl.") at ¶¶ 9-

19   10.  And, both Ms. Kilies and Mr. Schirm indicated their belief that Defendants are

20   each likely to accrue costs for the appeal consistent with those of Plaintiffs.  *Id.*

21  **III.    BACKGROUND**

22       The Court is well-acquainted with the history of this litigation.  Plaintiffs

23   will recount only the aspects of the procedural history relevant to the instant

24   motion.  After more than two years of contentious litigation and intense

25   negotiations, on October 28, 2016, this Court granted preliminary approval to the

26   Class Action Settlement.  *See* Docket No. 178.  Following notice to the Class,

27   timely objections were filed by, among others, Class Members Pamela Sweeney,

28   Ellen Bentz and Pamela Behrend.  *See* Anderson Decl. at Exhibits 1-3.  The

1   objections were purportedly *pro se*.  *See id.*  Before the final approval hearing,

2   Mrs. Sweeney, Ms. Bentz and Mrs. Behrend were each deposed.  *See* Anderson

3   Decl. at Exhibits 4-6 (deposition transcripts including exhibits to same).

4         On May 1, 2017, Class Counsel filed an unopposed motion for final

5   approval of the Settlement.  *See* Docket No. 216.  On the same date, Class Counsel

6   also filed a motion seeking attorney's fees, costs, and incentive awards for the

7   Named Plaintiffs.  *See* Docket No. 218.

8         The Court held the final approval hearing on June 5, 2017, and, after

9   receiving additional briefing, the Court signed an order granting final approval to

10  the Settlement, which was entered onto the docket on August 22, 2017.  *See*

11  Docket Nos. 250, 251.  None of the now-Appellants appeared at the final approval

12  hearing in-person or by phone, individually or through counsel.

13        On September 11, 2017, the Clerk's office received a notice of appeal from

14  Pamela Sweeney.  *See* Docket No. 252.  On September 19, 2017, the Clerk's office

15  received a notice of appeal from Ellen Bentz.  *See* Docket No. 256.  On September

16  22, 2017, the Clerk's office received an appeal from Pamela Behrend.[2]  *See* Docket

17  No. 261.

18  **IV.   ARGUMENT**

19        **A.    LEGAL STANDARD FOR ISSUANCE OF AN APPEAL BOND**

20  "'[T]he district court may require an appellant to file a bond or provide other

21  security in any form and amount necessary to ensure payment of costs on appeal.'"

22  *See Azizian v. Federated Dep't Stores, Inc.*, 499 F. 3d 950, 954-55 (9th Cir. 2007)

23  (quoting Fed. R. App. P. 7).  "'The purpose of an appeal bond is to protect an

24  appellee against the risk of nonpayment by an unsuccessful appellant.'"  *Miletak v.*

25  *Allstate Ins. Co.*, 2012 WL 3686785, *1 (N.D. Cal. 2012) (original brackets

26  _____

27  [2] Plaintiffs' request for an appeal bond from Mrs. Behrend is without waiver of
    arguments concerning her standing to appeal or the jurisdiction of the Ninth Circuit
28  to hear her appeal.  *See* Fed. R. App. P. 4.  Among other deficiencies, Mrs.
    Behrend's appeal was untimely.  *Id.*

omitted) (quoting *Fleury v. Richemont North Amer., Inc.*, No. 05-4525, 2008 WL 4680033, *6 (N.D. Cal. Oct. 21, 2008)).  "[T]he question of the need for a bond, as well as its amount, are left in the discretion of the trial court." *Fleury*, 2008 WL 4680033, *6 (citing Fed. R. App. P. 7, 1979 advisory committee notes).

In analyzing the appropriateness of an appeal bond, courts in the Ninth Circuit consider three factors:  (1) the appellant's financial ability to post a bond; (2) the risk that the appellant would not pay the appellee's costs if the appeal loses; and (3) the merits of the appeal.'"  *Shames v. Hertz Corp.*, 2013 WL 3155019, at *1 (S.D. Cal. June 18, 2013) (quoting *Fluery*, 2008 WL 4680033, at *6-7).  Each of these factors favors imposing an appeal bond on the present Appellants. Further, the issuance of appeal bonds against objectors in class action cases has become quite common in the Ninth Circuit.  *See, e.g., In re Netflix Privacy Litig.*, 2013 WL 6173772, *4 (N.D. Cal. Nov. 25, 2013) (assessing bond of $21,519 from each objector who sought to pursue appeal); *Redwen v. Sino Clean Energy, Inc.*, 2013 WL 12128684, *3 (C.D. Cal. December 20, 2013) (imposing appeal bond of $17,410.50 in $2 million dollar settlement); *Miletak v. Allstate Ins. Co.*, 2012 WL 3686785,  *2 (N.D. Cal. Aug. 27, 2012) (imposing an appeal bond of $60,000); *Dennings v. Clearwire Corp.*, 928 F.Supp.2d 1270, 1272 (W.D. Wash. 2013) (imposing an appeal bond of $41,150).  Each Objector meets all three criteria for requiring an appeal bond.

## B.    PAMELA SWEENEY SHOULD BE REQUIRED TO POST A BOND

Pamela Sweeney is a *pro se* serial objector whose husband is a Wisconsin lawyer and law school classmate of Darrell Palmer, a notorious serial objector and disbarred California attorney.  *See* Anderson Decl. Exhibit 4 at Pg. 53, Lns. 18-25. By her own account, Mrs. Sweeney was previously represented by her husband, and in an appeal by Darrell Palmer, when she filed her first couple of objections three years ago, but now objecting is her "deal".  *See* Anderson Decl. Exhibit 4 at

1   Pg. 18, Ln. 7.  At the time of her deposition on April 10, 2017, Mrs. Sweeney had

2   filed objections to nine class action settlements, including five in 2016 alone.  *See*

3   Anderson Decl. Exhibit 4 at Pg. 16, Lns. 15-18; Pg. 50, Lns. 9-11.

4        To the best of her recollection, Mrs. Sweeney filed appeals in six of the nine

5   cases she objected in.  *See* Anderson Decl. Exhibit 4 at Pg. 23, Lns. 18-21.   That

6   number has increased to seven with the filing of her appeal in the instant case.

7   Yet, counsel was unable to find a single case in which Mrs. Sweeney appeared *pro*

8   *se* and actually filed an appeal brief after filing a notice of appeal.  Mrs. Sweeney

9   has had at least one appeal dismissed for failure to post an appeal bond.  *See*

10  Anderson Decl. Exhibit 4 at Pgs. 47-48, Lns. 17-3.  And in the instant case, a show

11  cause order is pending from the Ninth Circuit because Mrs. Sweeney has not even

12  paid the fee to pursue her appeal.  *See* Docket No. 259.  Mrs. Sweeney's

13  motivations are clear.  While she acknowledges settling three of her objector

14  appeals, she refused to disclose which cases and whether she accepted money in

15  exchange for the dismissals.  *See* Anderson Decl. Exhibit 4 at Pg. 21, Lns. 2-24.

16        In short, Pamela Sweeney meets all the criteria for issuance of a bond.

17        **1.   Mrs. Sweeney Has Not Demonstrated An Inability To Pay A**

18             **Bond**

19        First, to the extent Mrs. Sweeney may claim that she cannot post a bond, it is

20  Mrs. Sweeney's burden to establish that she lacks the financial capacity to do so.

21  *Miletak*, 2012 WL 3686785, at *2 (absence of evidence that the objector is unable

22  to bond "weighs in favor of imposing an appeal bond"); *see also In re Initial Pub.*

23  *Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) (ability to post

24  bond is "presumed" where objectors do not present evidence to the contrary).

25  "[F]inancial information" is required; a mere assertion as to financial inability in a

26  declaration, without more, is insufficient and "weighs in favor of imposing a

27  bond." *Miletak*, 2012 WL 3686785, at *2, n.4.  And, if indeed, Mrs. Sweeney

28  claims that she cannot afford to pay a bond she should be required to provide

1    detailed financial information, including her husband's income derived from his

2    legal practice, as well as all the income Mrs. Sweeney has earned—including any

3    income derived from her agreement to dismiss class action appeals or objections

4    on behalf of herself or her children.

5         **2.    There Is A Substantial Risk That Mrs. Sweeney Will Not Pay**

6         **Costs If Her Appeal Is Unsuccessful**

7         The fact that Mrs. Sweeney is an out-of-state resident alone is a factor

8    supporting issuance of an appeal bond.  *See Schulken v. Washington Mut. Bank,*

9    2013 WL 1345716, at *5 (N.D. Cal. April 2, 2013) ("Courts in the Northern

10   District of California have recognized the difficulty and risk associated with

11   collecting costs from out-of-state appellants."); *see also Embry v. ACER Am.*

12   *Corp.*, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012).  When her out-of-state

13   residency is coupled with her failure to pay an appeal bond in at least one prior

14   class action appeal, and her failure to pay even the filing fee in this case, the scale

15   tips heavily in favor of an appeal bond in this case.

16        **3.    Mrs. Sweeney's Appeal Is Meritless**

17        The merits of an appeal must also be considered in conjunction with a

18   court's decision to issue an appeal bond.  *See, e.g., Miletak*, 2012 WL 3686785, at

19   *2 (Court found appeal to be "meritless" and ordered appellant to post a bond of

20   $60,000).  In the final approval order the Court twice noted that the grounds for

21   Mrs. Sweeney's appeal were "vague."  *See* Docket No. 250 at Pg. 16, Lns. 6-11.

22   The vagueness of Mrs. Sweeney's objection is unsurprising given that she makes

23   many of the same stock arguments in nearly every objection she files.  *See*

24   Anderson Decl. Exhibit 4 (Exhibits 2-9 to deposition transcript).  Although her

25   objection asserts that the Settlement amounts are insufficient, she fails to explain

26   why.  She also fails to explain what amount would be sufficient.  If she had a valid

27   claim against these Defendants, she could have opted out and pursued her claim for

28   individual damages.  However, her background, and even a cursory review of the

1    objection, shows that it was filed in order to create standing for an appeal so that

2    the delay caused by the appeal and concomitant harm to the Class could be used as

3    leverage to extort money from Class Counsel.  Since her appeal is plainly without

4    specificity or merit, this factor also supports issuance of a bond.

5         **C.    ELLEN BENTZ SHOULD BE REQUIRED TO POST A BOND**

6         Ellen Bentz is also an alleged *pro se* objector.  However, in Ms. Bentz's case

7    she is not the driving force behind her objection, a lawyer to whom she owes

8    money is.  In her deposition, Ms. Bentz explained:

9              Q. Do you have a fee agreement in this case?

10             A. No.

11             Q. Do you have an understanding as to how you will compensate Mr.

12        Lenox if your objection is successful?

13             A. We have not – we have not discussed particulars of anything, no.

14             Q. So you have had no discussion with your counsel about how he'll

15        be compensated for work in this case?

16             A. No, none.

17             Q. Does that concern you at all?

18             A. No, I owe him money from the previous case that I'm – that I owe

19        him, from the one that he helped my sister and I with.

20    *See* Anderson Declaration Exhibit 5 at Pgs. 123-124, Lns. 20-7.

21        Her notice of appeal makes as much clear—although Ms. Bentz purportedly

22    filed the objection *pro se*, her filing fee was paid by her lawyer.  *See* Docket Nos.

23    254-255.  During the deposition, it was clear that Ms. Bentz lacked even a basic

24    understanding of what a class action is and was completely unaware of the

25    potential impact of her objection:  "Q. What do you understand to be the result if

26    your objection is successful? A. I don't know.  I have absolutely no idea…"  *See*

27    Anderson Declaration Exhibit 5 Pgs. 155-156, Lns. 25-3.  Ms. Bentz did not even

28    know whether she had filed a claim under the Settlement that she was objecting to.

("Q. Have you filed a claim with the settlement administrator? A. I don't know. I have no idea if Mr. Lenox filed a claim or not. Q. Do you plan to file a claim? A. I don't know. We have not discussed that. I have no idea. Am I allowed to ask him now? Q. No, but perhaps after the deposition you might ask.  A. Okay. I don't know. Q. But to your knowledge you haven't filed a claim in the lawsuit then? A. No, sir. I haven't signed anything. Would that be something I would sign?").  *See id.* at Pgs. 161-162, Lns. 13-3.

Despite the fact that the deposition occurred well before the deadline for submission of claims, Ms. Bentz and her lawyer, who now seek to delay relief to more than 400,000 Class Members indefinitely, did not even bother to file a claim.

As set forth below, Ms. Bentz readily meets the criteria for issuance of an appeal bond.

### 1.    Ms. Bentz Has Not Demonstrated An Inability To Pay A Bond

Ms. Bentz testified that she lives on a trust fund.  *See* Anderson Declaration at Exhibit 5, Pg. 126, Lns. 12-14.  ("Q. And what is your source of income now? A. It's a trust from my father.").  Accordingly, Ms. Bentz should be readily able to post a bond for this appeal.  To the extent Ms. Bentz claims that she cannot post a bond, it is Ms. Bentz's burden to establish that she lacks the financial capacity to do so.  *Miletak*, 2012 WL 3686785, at *2 (absence of evidence that the objector is unable to bond "weighs in favor of imposing an appeal bond"); *see also In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 293 (S.D.N.Y. 2010) (ability to post bond is "presumed" where objectors do not present evidence to the contrary).  "[F]inancial information" is required; a mere assertion as to financial inability in a declaration, without more, is insufficient and "weighs in favor of imposing a bond."  *Miletak*, 2012 WL 3686785, at *2, n.4.  Certainly, her lawyer has the ability to post the bond since he also paid the cost of her appeal.  *See* Docket No. 254.

## 2.    There Is A Substantial Risk That Ms. Bentz Will Not Pay Costs If Her Appeal Is Unsuccessful

The fact that Ms. Bentz is an out-of-state resident alone is a factor supporting issuance of an appeal bond.  *See Schulken v. Washington Mut. Bank,* 2013 WL 1345716, at *5 (N.D. Cal. April 2, 2013) ("Courts in the Northern District of California have recognized the difficulty and risk associated with collecting costs from out-of-state appellants."); *see also Embry v. ACER Am. Corp.*, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012).

Additionally, despite her *pro se* status, communications with Ms. Bentz have only occurred through her purported counsel.  *See* Anderson Decl. at ¶ 11.  Given that her attorney paid the appeal fee, wrote the objection, and undoubtedly drafted the notice of appeal, but yet has not filed an appearance, nor bothered to file a claim on Ms. Bentz's behalf, there is a reasonable likelihood that if Ms. Bentz's appeal is unsuccessful she will not take responsibility for the payment of costs.  Since her attorney has yet to file an appearance and has had everything filed *pro se* despite his obvious involvement, he would not be liable for costs for this frivolous appeal either.  In fact, this could likely be the basis for his not filing an appearance.

## 3.    Ms. Bentz's Appeal Is Without Merit

Each of the arguments raised by Ms. Bentz's ghostwriting attorney were considered and rejected by the Court at final approval.  *See* Docket No. 250 at Pg. 17, Lns. 7-18.  And despite the fact that the objection was written by an attorney, there is not a single rule or case cited.  *See* Anderson Decl. at Exhibit 5, Pg. 182, Lns. 3-6 ("Q. So the words in your objection, did you write any of the sentences in this objection. A. Personally write, no….").  Ms. Bentz's lawyer did not attend the final approval hearing or file any document subsequent to the objection save the notice of appeal.  Instead, it appears he sent in a three-page letter as a placeholder for the appeal he is now funding and pursuing in an effort to secure a personal payment to pay his fee from a prior case.  Under these circumstances, it is clear the

1    appeal lacks merit and the Court ought to require a bond.  *See, e.g., Miletak*, 2012

2    WL 3686785, at *2 (court found appeal to be "meritless" and ordered appellant to

3    post a bond of $60,000).

4    **D.    PAMELA BEHREND SHOULD BE REQUIRED TO POST A**

5    **BOND**

6         Pamela Behrend also filed her objection as *pro se*, but that assertion is

7    untrue.  Mrs. Behrend's husband, Kenneth Behrend, is a named partner in a

8    Pittsburgh law firm.  No direct communication occurred with Mrs. Behrend except

9    at her deposition—all communication with Mrs. Behrend has gone through her

10   lawyers, despite no appearance having been filed in the District Court by any of

11   them.  Anderson Decl. at ¶ 12.

12        Mr. Behrend's firm provided a lawyer to defend her deposition, and Mrs.

13   Behrend listed that same lawyer from her husband's firm as the point of contact on

14   her Tier 2 Claim Form.  *Id.* at ¶ 12.  Mr. and Mrs. Behrend are experienced

15   objectors, having both objected to a class settlement concerning American Home

16   Shield just a few years ago.  *See* Anderson Decl. at Exhibit 6, Pgs. 12-13, Lns. 23-

17   2.

18        After filing her notice of appeal, Mrs. Behrend retained a lawyer who is a

19   well-known professional class action objector —N. Albert Bacharach, Jr.—to

20   pursue a payment for her (and himself) in this litigation.  While Mrs. Behrend's

21   objection focused exclusively on statutory minimum damages under Tier 1, Mrs.

22   Behrend actually filed a Tier 2 claim.  Thus, she lacks standing to even raise the

23   Tier 1 relief complained of in her *pro se* objection.  *See* Anderson Decl. at Exhibit

24   6, Pg. 57, Lns. 13-17 ("A. Okay.  And if you were – what is your goal with filing

25   the objection? A. I would like the people in Pennsylvania to get their minimum. Q.

26   Okay.  Any other goals?  That's it.").  Because she has the financial resources to

27   pay a bond, is an out-of-state objector, and her appeal lacks merit, Mrs. Behrend

28   plainly meets the criteria for issuance of a bond.

### 1.   Mrs. Behrend Testified That She Has The Financial Resources To Post A Bond

In deposition, Mrs. Behrend was asked whether she has the financial resources to post and bond and she stated that she does.  *See Anderson Decl.* at Exhibit 6, Pgs. 70-71, Lns. 24-13 (Q. Do you and your husband have the financial ability to post a bond, what is called an appeal bond, which would be, probably covers the cost of keeping all the accounts open and available during the time period of the appeal.  And so sometimes the court will require an appeal bond.  Have you talked to your husband about that? A. A little bit.  Q. Okay. A. And we have a lot of equity in our house.  We have plenty of equity in that.  We have a good retirement plan we can borrow against.  Q. So you have the financial ability? A. Yes.").  Thus, this factor supports the assessment of a bond.  *See In re Netflix*, 2013 WL 6173772, at *3 ("Generally, district courts have found that this first factor weighs in favor of a bond unless a party is financially unable to post a bond.") (internal citations omitted).

### 2.   Mrs. Behrend Poses A Risk Of Nonpayment of Costs

Mrs. Behrend is a resident of Wexford, Pennsylvania.  *See Anderson Decl.* at Exhibit 6, Pg. 8, Lns. 18-19.  Courts in the Ninth Circuit have held that out of state objectors, such as Mrs. Behrend, pose a greater risk of non-payment of costs.  *See Redwen*, 2013 WL 12128684, at *2 ("Courts have found that imposition of a bond is favored when, like here, most or all of the objectors are outside of the District.") (internal citations omitted).  Thus, the risk of non-payment factor also favors imposition of a bond for Mrs. Behrend.

### 3.   Mrs. Behrend's Appeal Has No Merit

Finally, Mrs. Behrend's appeal lacks any merit.  Mrs. Behrend raised two arguments in her objection.  First, Mrs. Behrend stated that residents of states with statutory minimum damages, like Pennsylvania, ought not be limited to $25 under Tier 1.  *See* Anderson Decl. at Ex. 3.  Second, Mrs. Behrend argued that the

1    attorney's fees were too high and it adversely impacts Tier 1 claimants. *Id.*

2          Mrs. Behrend's first argument—that a compromise in a class action reached

3    before a verdict in a jury or bench trial—must meet every state's minimum damage

4    amount is specious.  Putting aside for a moment the California choice of law

5    provision in Defendant's terms and conditions, there is no *per se* rule that every

6    settlement must meet any statutory minimum under Pennsylvania's consumer

7    protection statute, or any other state's, for that matter.  *See, e.g., In re Nutella*

8    *Marketing and Sales Practices Litigation*, 589 Fed. Appx. 53 (3d. Cir. 2014)

9    (upholding national settlement of consumer claims including a refund of $4.00 per

10   jar of Nutella purchased up to a maximum of $20.00 per consumer).  What is more,

11   Mrs. Behrend's standing is limited to advancing her own interests, not those of

12   other class members.  In *Devlin v. Scardelletti,* 536 U.S. 1, 9 (2002), the Supreme

13   Court held that non-named class members objecting to the approval of a settlement

14   may appeal, but the Court noted that such an objector "will only be allowed to

15   appeal that aspect of the District Court's order that affects him."

16         Because Mrs. Behrend, did not even file a Tier 1 claim, she lacks standing to

17   advance arguments concerning Tier 1 claimants—the only arguments advanced in

18   her objection.  As to Mrs. Behrend's claim that the attorney's fees are excessive,

19   the original fee request was voluntarily reduced by $1 million at the urging of the

20   Court.  The fee approved by the Court amounts to 20.7% of the common fund in

21   this case, well below the 25% threshold considered a benchmark in the Ninth

22   Circuit.  As a result, neither of the two arguments advanced by Mrs. Behrend in her

23   objection have merit.  Thus, factor three also supports imposition of a bond.

24         **E.     AMOUNT OF THE BOND**

25               **1.     Appellate Costs**

26         The Ninth Circuit has held that Rule 7 costs on appeal include those

27   identified in Federal Rule of Appellate Procedure 39(e), which include preparation

28   of the record, reporter's transcripts, and filing fees.  *See Azizian,* 499 F.3d at 958

("[w]e read this language to mean that the costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal.").  Plaintiffs secured a quote from Gibson Moore Appellate Services, LLC, and appellate costs for preparing and filing briefs and appendices and other associated fees were estimated to be $1,942.50.  Anderson Decl. at ¶ 8.  Defendants Guthy-Renker and Wen by Chaz Dean have indicated that they anticipate accruing similar costs.  *Id.* at ¶¶ 9-10.

These amounts are consistent with amounts awarded in similar cases.  On the lower end, the Court in *Dennings*, found $2,000 to be a reasonable amount for the cost of acquiring a transcript and filing documents with the appellate court.  *See Dennings*, 928 F.Supp.2d at 1272.  On the more expensive end of the spectrum, in *Miletak* the court found that $10,000 was the appropriate amount for the portion of the bond covering Appellee's costs on appeal.  2012 WL 3686785, at *2.

Plaintiffs respectfully request that the Appellants each be required to post a bond for appellate costs in the amount of $5,827.50 in addition to the component of the bond requested to account for increased settlement administration costs.

### 2.    Settlement Administration Costs

As set forth in the Declaration of Nancy Baker, submitted contemporaneously herewith, the Settlement Administrator continues to receive a substantial number of communications from Class Members by phone and email.  Responding to these communications is time-consuming and costly.  It cannot be gainsaid that these Appellants will substantially increase administrative costs for this Settlement.  Several factors make the administrative costs of this Settlement higher than many settlements.  First, the Class is large with over 8,000,000 individuals receiving direct notice.  Second, this case involves hair loss, a very emotional issue for those involved.  Third, the Tier 2 claimants stand to receive, in some cases, substantial sums of money, increasing engagement.  At present, the Settlement Administrator is receiving approximately 100 calls per day with nearly 40% of those requesting a return call, and nearly 30 emails today.  Because of the

nature of the claims, the calls with Class Members are not very short.  The time expenditure for these communications alone is costly—roughly $8,500 per month.  *See* Baker Declaration at ¶ 7.  Even if one presumes that the communication rate will drop to one-third of its present rate during the appeal, the monthly costs are still likely to exceed $2,833.00 per month.  *Id.* at ¶ 9.

According to the Frequently Asked Questions page on the Ninth Circuit website the time from notice of appeal until oral argument is "approximately 12-20 months from the notice of appeal date" and the time from argument to decision is typically "3 months to a year."  *See* https://www.ca9.uscourts.gov/content/faq.php (last checked October 11, 2017).  Thus, ignoring the costs of website maintenance, and assuming that this appeal runs on the shortest time table, the administrative costs of the delay occasioned by these appeals will be approximately $42,499 ($8,500 per month / 3 * 15 months).  *See* Baker Declaration at ¶¶ 9-10.  Thus, Plaintiffs request that Appellants be required to post a bond of $42,499 each for administrative costs.

These amounts are consistent with prior appeal bonds required in the 9th Circuit.  *See Miletak v. Allstate Ins. Co.*, 2012 WL 3686785, *2 (N.D. Cal. Aug. 27, 2012) (imposing an appeal bond of $60,000, with $50,000 accounting for increased administrative costs); *Dennings v. Clearwire Corp.*, 928 F.Supp.2d 1270, 1272 (W.D. Wash. 2013) (imposing an appeal bond of $41,150, with $39,150 of the bond allocated to increased administrative costs).

## V.    CONCLUSION

As the above analysis and supporting documents demonstrate, issuance of an appeal bond is entirely appropriate as to these Appellants.  Therefore, Plaintiffs respectfully request that this Honorable Court grant this Motion and require each Appellant to post a bond in the total amount of $48,326.50 (comprised of $5,827.50 in appellate costs and $42,499 in administrative costs).

DATED:  October 20, 2017

**JOHNSON & JOHNSON**

By:   s/ Jordanna G. Thigpen
_____

Neville L. Johnson (SBN 66329)
njohnson@jjllplaw.com
Douglas L. Johnson (SBN 209216)
djohnson@jjllplaw.com
Jordanna G. Thigpen (SBN 232642)
jthigpen@jjllplaw.com
439 North Canon Drive, Suite 200
Beverly Hills, California 90210
Telephone:  (310) 975-1080
Facsimile:  (310) 975-1095

**CUNEO GILBERT & LADUCA, LLP**

By:   /s/ William H. Anderson
_____

William H. Anderson (*Pro Hac Vice*)
wanderson@cuneolaw.com
Charles J. LaDuca (*Pro Hac Vice*)
charlesl@cuneolaw.com
Michael Flannery (SBN 196266)
mflannery@cuneolaw.com
4725 Wisconsin Ave., NW
Suite 200
Washington, DC 20002
Telephone:  (202) 789-3960
Fax:  (202) 789-1813

**VARNELL & WARWICK, P.A.**

By:   /s/ Brian W. Warwick
_____
Brian W. Warwick (*Pro Hac Vice*)
bwarwick@varnellandwarwick.com
Janet R. Varnell (*Pro Hac Vice*)
jvarnell@varnellandwarwick.com
P.O. Box 1870
Lady Lake, FL  32158
Telephone:  (352) 753-8600
Facsimile:  (352) 753-8606

*Counsel for Named Plaintiffs and the Class*

1  **ATTESTATION RE: SIGNATURES**

2

3        I, Jordanna G. Thigpen, am the ECF User who is filing Plaintiffs' Joint

4  Declaration of Interim Lead Counsel In Support of Motion for Preliminary

5  Approval.  I attest that all signatories listed, and on whose behalf the filings are

6  being submitted, concur in the content of such filings and have authorized the

7

8  filing of such documents.

9  DATED: 10/20/17                    **JOHNSON & JOHNSON LLP**

10

11                                         /s/ Jordanna G. Thigpen

12                                         Neville L. Johnson (Bar No. 66329)
                                          njohnson@jjllplaw.com
13                                         Douglas L. Johnson (Bar No. 209216)
                                          djohnson@jjllplaw.com
14                                         Jordanna G. Thigpen (Bar No. 232642)
15                                         jthigpen@jjllplaw.com
16                                         **JOHNSON & JOHNSON LLP**
                                          439 North Canon Drive, Suite 200
17                                         Beverly Hills, California 90210
                                          Telephone: 310.975.1080
18                                         Facsimile: 310.975.1095

19

20

21

22

23

24

25

26

27

28